Arnold A. GAUB, Appellant (Defendant),

v.

Elwood "Bill" J. SIMPSON,
Appellee (Plaintiff).

No. 93–23.

Supreme Court of Wyoming.

Dec. 30, 1993.

Arnold A. Gaub, pro se.

Robert W. Horn, and Steven D. Olmstead, Jackson, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

THOMAS, Justice.

The only question to be resolved in this case is whether Elwood "Bill" J. Simpson (Simpson) discharged an Internal Revenue Service (IRS) lien against property he owned under circumstances that made him a volunteer and foreclosed him from legal subrogation. In a classic effort at obfuscation, Arnold A. Gaub (Gaub) presented the case as one involving the responsibility of a grantor under a warranty deed to defend the title to the property. It is clear the trial court focused upon the fact Simpson paid the amount of a tax lien against his property for taxes owed by Gaub. Through a straw man transfer, Simpson acquired the property from a grantee of Gaub to whom Gaub had conveyed the property prior to the attachment of the lien for federal taxes. When the IRS asserted the tax lien against his property, Simpson demanded Gaub obtain a release of the lien, paid the amount of the lien after Gaub failed to do so, and brought this action against Gaub to recover the amount paid. Gaub appeals from the judgment entered by the trial court in favor of Simpson, essentially contending that, for various reasons, he owed no duty to Simpson to defend the title to the property. We agree with the trial court that Simpson was not a volunteer when he paid the amount of the taxes to avoid foreclosure of a lien against his property, and he became entitled, as a matter of subrogation, to recover that amount from Gaub. The judgment of the trial court is affirmed.

Representing himself, Gaub sets forth the issues in his brief as follows:

1. After a warranty deed is executed and delivered, and the grantee then neglects or refuses to record the deed for a number of years, must the grantor defend the title for the grantee against any intervening lienholder filings between the time of delivery of the deed and the time of the recording of the deed.

2. After the IRS executes a lien release on a property, and that property deed has then been recorded in the name of the new owner free of all encumbrances, may the IRS thereafter levy and seize that property again in the name of the former deed holder.[1]

---

1. Gaub misstates the facts in this case. The property was not free of all encumbrances as

Gaub contends. Defendant's Exhibit No. 3 is a

3. When a document signed by the IRS confirms that property of an individual and the seizure thereof shall not occur after an agreed date, may the trial court disregard that document in evidence and conclude that the plaintiff's payment to the IRS was compelled and not voluntary.

4. Must a trial court observe and modify an initial judgment when obvious errors and exclusions are timely filed by the defendant with the court in "objections" to the *Findings of Fact and Conclusions of Law* as presented by the prevailing counsel for the court's approval.

Simpson, in his Brief of Appellee, does not agree with the issues set forth by Gaub, and he states the issues in this way:

I. Whether there is sufficient evidence to support the findings of fact and conclusions of law of the trial court.

II. Whether the trial court abused its discretion, as a matter of law, ruling in favor of appellee.

III. Whether the appellant has framed a cogent argument with pertinent authorities for the Supreme Court to review.

The essential material facts may be captured in a chronology of pertinent dates and events:

- October 18, 1982—Gaub, as grantor, sold and conveyed by warranty deed Lot 23 (the property) in Alpine Village Subdivision in Lincoln County, Wyoming to Loren [Lorne] Cook (Cook).
- Unspecified date in 1983—Simpson came from Indianapolis and purchased Cook's interest in the property by directly paying to Gaub the amount owed by Cook. At

that time, Gaub agreed he would "take care of recording the deed."
- November 5, 1984—The IRS filed a lien for income taxes owed by Gaub in the amount of $8,945.63 against the property.
- May 24, 1985—The IRS filed a second lien in the amount of $424.11 against the property. (Both liens were filed against this property because Gaub was the owner of record.)
- December 4, 1987—The warranty deed from Gaub to Cook was recorded.
- January 13, 1988—A warranty deed from Cook to Dale and Linda Perry (Perrys) was recorded. The Perrys were employed by Simpson.
- September 21, 1988—A warranty deed from the Perrys to Simpson was recorded.
- April 10, 1992—The IRS sent a notice of seizure of the property to satisfy the tax lien.
- April 10, 1992—Under threat of dispossession, Simpson paid the asserted lien plus interest in the total amount of $12,425.
- November 9, 1992—Simpson filed a complaint against Gaub in the Third Judicial District Court in Lincoln County seeking reimbursement of the $12,425 paid to the IRS.
- January 13, 1993—The district court ruled in favor of Simpson and entered a judgment for him in the amount of $12,425.

Gaub appeals from the judgment, contending he owed no duty to defend the title to the property because, at the time of the conveyance, there were no encumbrances, and the encumbrances attached only because Cook failed to record the deed. Simpson argues he is entitled to a judgment for $12,425 be-

letter dated April 3, 1992 from an IRS revenue officer to the Lincoln County Clerk which states:

The Release of Levy dated 10–02–86 does *not* cover a tax lien. Mr. Gaub's property had been under seizure and the release was only releasing the property from seizure.

The liens still attach to all property including the one released from seizure.

This court has had occasion to comment on the procedural standards required in appeals and has said:

Because appellant is proceeding pro se, he may simply be unaware of what is required to perfect an appeal under the Wyoming Rules of Appellate Procedure. We must, however,

abide by our firm rule that requires a pro se litigant to comply with the same procedural standards as those litigants represented by counsel. *Apodaca v. Ommen,* 807 P.2d 939, 943 (Wyo.1991); *Annis v. Beebe & Runyan Furniture Co.,* 685 P.2d 678, 679 (Wyo.1984); *Matter of GP,* 679 P.2d 976, 985 (Wyo.1984). Therefore, our rules of appellate procedure apply equally to appellant * * *.

*Stone v. Stone,* 842 P.2d 545, 547 (Wyo.1992).

Failure to follow the Wyoming Rules of Appellate Procedure does not assist the pro se litigant in presenting his position. Some cases have even been dismissed by this court for failure to follow these appellate rules.

cause he paid the IRS on behalf of Gaub to prevent the seizure of his property. The issue Gaub seeks to debate is whether a grantor who has transferred real property by warranty deed has a duty to defend the title with respect to a remote purchaser. Simpson apparently is willing to maintain the judgment on any ground and essentially urges the sufficiency of the evidence to support the determination by the trial court.

The approach of the trial court is summarized in this statement taken from the judge's remarks from the bench:

> In this lawsuit, it seems like [counsel for Simpson] is proceeding more on the theory that, Mr. Gaub, Mr. Simpson paid off your obligation, so, therefore, you should pay Mr. Simpson. He seems to be relying on that more than on any basis that you warranted title to this property, not only to Mr. Cook but to all other people who were successors to Mr. Cook and who, in turn, conveyed by warranty deeds.

The district court did discuss warranty deeds with Gaub, but the essence of its ruling was that, confronted with the IRS lien and the threat to foreclose, Simpson chose to pay the taxes claimed due and then to seek to recoup the amount he had paid from Gaub. The trial court, furthermore, ruled that Simpson was not a volunteer because of the duress of the lien.

In light of the disposition by the trial court, while Gaub chooses to debate the effect of a warranty deed, we are satisfied the question that needs to be resolved is whether Simpson paid an obligation of Gaub to the IRS and, therefore, became subrogated to the IRS claim against Gaub. In order to answer that question, the court must determine whether Simpson acted as a volunteer in paying the IRS lien. This approach does not implicate the effect of Gaub's warranty deed in any way.

■ While it is correct, as Simpson asserts, that this court can sustain the trial court's judgment on any lawful ground reflected in the record (*e.g., Union Pacific Resources Co. v. State of Wyoming*, 839 P.2d 356 (Wyo.1992); *City of Laramie v. Hysong*, 808 P.2d 199 (Wyo.1991); *Matter of Adoption of RDS*, 787 P.2d 968 (Wyo.1990); *Price v.*

*Sorrell*, 784 P.2d 614 (Wyo.1989); *Agar v. Kysar*, 628 P.2d 1350 (Wyo.1981); *Wightman v. American Nat'l Bank of Riverton*, 610 P.2d 1001 (Wyo.1980)), we are satisfied we need not invoke any ground not presented in the trial court. As we have noted, the trial court held, in effect, that Simpson had discharged an obligation of Gaub to the IRS. While the parties did not discuss subrogation, Wyoming precedent would support the court's finding that Simpson was subrogated to the rights of the IRS against Gaub. The question then arises whether Simpson was a volunteer. In our view, the trial court correctly held Simpson was not a volunteer.

■ In *Commercial Union Ins. Co. v. Postin*, 610 P.2d 984 (Wyo.1980), we discussed legal or equitable subrogation as contrasted to contractual subrogation in connection with a payment of damages made by an insurance company, which then sought to recover the damages paid from an alleged third-party tortfeasor. We described the right of legal subrogation as the payment by the subrogee to the subrogor of a debt conceptually owed by another. We there noted that, in order for one to proceed under the theory of legal or equitable subrogation, there was a necessity that the person or entity claiming subrogation act out of a concern about self-protection. *Cf. Fulton v. Des Jardins*, 67 Wyo. 517, 227 P.2d 240, 245 (1951). We quoted from an earlier Wyoming case, *Wyoming Bldg. & Loan Ass'n v. Mills Constr. Co.*, 38 Wyo. 515, 269 P. 45, 48 (1928):

> The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity, and is given when otherwise there would be a manifest failure of justice. This is legal subrogation.

Later, in *Northern Util. Div. of K N Energy, Inc. v. Town of Evansville*, 822 P.2d 829, 835 (Wyo.1991), we quoted with approval the following language from *Postin*, 610 P.2d at 989–90:

> Within the ambit of legal-subrogation law, it is recognized that one is not a volunteer where it is shown that he made

payment to protect his own interest. At 73 Am.Jur.2d, Subrogation, § 25, "Persons acting in self-protection," p. 614, it is said:

"The right of subrogation is not necessarily confined to those who are legally bound to make the payment, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged. A person who has an interest to protect by making the payment is not regarded as a volunteer. * * * The extent or quantity of the subrogee's interest which is in jeopardy is not material. If he had any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could. * * * It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect."

We again held, in the context of a dispute between joint tortfeasors, that Northern Utilities did present a genuine issue of material fact as to its status as a joint tortfeasor. In the context of the case, that determination was preliminary to whether Northern Utilities acted as a volunteer, which we noted is a question of law to be determined by the court.

Turning to the earlier Wyoming case, *Wyoming Bldg. & Loan Ass'n,* 269 P. at 48–49, we quote:

One instance in which legal subrogation is applied is in connection with the protection of a lien, and the rule is universal that one who has an interest in property by lien or otherwise, in making payment of prior liens, including taxes, is not a mere volunteer, and that he will be entitled, upon payment of a superior lien in order to protect his own lien, to be subrogated to the rights of the superior lienholder. *Marks v. Baum Building Co.,* 73 Okl. 264, 175 P. 818; Wiltse, Mortgage Foreclosure, §§ 542 and 1221; Cooley, Taxation, § 1263; 37 Cyc. 443, 444; 25 R.C.L. 1346.

We are satisfied this concept still is sound, and there is no basis to distinguish *Wyoming Bldg. & Loan Ass'n,* involving state taxes, from this instance, in which an IRS lien was paid by the owner of the property.

In summary, then, we are satisfied with the legal propriety of the ruling by the district court, in accordance with Wyoming law, that Simpson paid a tax bill, which Gaub owed, in order to protect Simpson's property from an IRS lien. The law justifies this action on the part of Simpson; makes Simpson a subrogee to the rights of the IRS; and demonstrates that, in pursuing the course he chose, Simpson did not act as a volunteer.

The judgment of the district court is affirmed.