2005 WY 77

**BUDD–FALEN LAW OFFICES, P.C., Appellant (Defendant),**

v.

**ROCKY MOUNTAIN RECOVERY, INC., a Wyoming Corporation, Appellee (Plaintiff).**

No. 04–215.

Supreme Court of Wyoming.

July 13, 2005.

Rehearing Denied Aug. 8, 2005.

Representing Appellant: Franklin J. Falen, Karen Budd–Falen, Lloyd D. Richenbach and Brandon Jensen of Budd–Falen Law Offices, LLC, Cheyenne, Wyoming; and Thomas R. French of Thomas R. French, P.C., Ft. Collins, Colorado.

Representing Appellee: Keith R. Nachbar and Patrick J. LeBrun of Keith R. Nachbar, P.C., Casper, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BROOKS, D.J.

KITE, Justice.

[¶ 1] Rocky Mountain Recovery, Inc., (Rocky Mountain) sought to recover monies Bunn & Associates (Bunn) alleged Budd–Falen Law Offices, P.C. (Budd–Falen) owed for court reporting transcription services. Budd–Falen claimed it was not responsible for payment for the transcription services. The district court held otherwise and ordered Budd–Falen to pay transcription fees in the amount of $12,113.80 plus prejudgment interest of $2,409.14. Budd–Falen appealed. We affirm.

## ISSUES

[¶ 2] Budd–Falen presents the following issues:

A. Whether 43 C.F.R. § 4.474(d) limits Budd–Falen Law Offices, P.C.'s liability for transcription services to the payment of the actual costs associated with delivering a copy of the transcripts to Budd–Falen Law Offices, P.C.?

B. Whether Budd–Falen Law Offices, P.C., as an agent for disclosed principals, is obligated to Bunn & Associates for transcription services provided to Budd–Falen Law Offices, P.C.'s principals by Bunn & Associates?

C. Whether questions of fact existed regarding reasonableness which would preclude the granting of summary judgment improper? [sic]

Rocky Mountain re-states the issues as follows:

I. Does 43 C.F.R. § 4.474(d) entitle Budd–Falen Law Offices, P.C. to the daily e-mailed transcripts for free?

II. Did the District Court correctly find that no genuine issue of material fact existed and that under "customary business practices" Budd–Falen Law Offices, P.C. agreed to be responsible for the charges for the transcripts?

III. Did the District Court correctly find that no genuine issue of material fact existed regarding the reasonableness of the amount charged for the court reporting services?

IV. Should Appellee be awarded its attorney's fees and costs necessary for defending the Appellant's frivolous appeal?

## FACTS

[¶ 3] Budd–Falen represented eight clients in an appeal to the Hearings Division of the Office of Hearings and Appeals of the Department of Interior (OHA). OHA hired Bunn to transcribe the thirteen-day hearing. During the course of the hearing, Budd–Falen ordered and received daily e-mail copies of the hearing transcripts on a next day delivery basis.

[¶ 4] After the hearing and the completion of its services, Bunn submitted bills to OHA and Budd–Falen for its services. OHA paid its bill. Budd–Falen did not, claiming that it was not responsible to Bunn for payment of the daily e-mail copies of the hearing transcript ordered by Karen Budd–Falen. After further efforts to obtain payment failed, Bunn hired Rocky Mountain to collect the amount owing from Budd–Falen.

[¶ 5] On July 22, 2003, Rocky Mountain filed a complaint against Budd–Falen for breach of contract alleging the firm received services from Bunn valued at $14,013.22, which it refused to pay. Rocky Mountain sought payment of the amount allegedly owed plus interest in the amount of $801.04 and the $75.00 cost of filing the complaint. Budd–Falen answered and moved for summary judgment asserting that: 1) as an agent of disclosed principals (i.e., its clients) it was not liable for the contract entered into on behalf of the principal; 2) the purchase order between OHA and Bunn failed to state the amount interested parties such as Budd–Falen would be charged for copies of the transcript as required by 43 C.F.R. § 4.23, and because of that failure, Bunn was not entitled to recover any amount; and, 3) Rocky Mountain was not entitled to recover attorney's fees.

[¶ 6] Rocky Mountain also moved for summary judgment, contending simply that Budd–Falen and Bunn entered into a contract when Karen Budd–Falen, an attorney acting on behalf of the firm, asked Bunn during the hearing to provide her with daily copies of the hearing transcript on a next day delivery basis; the court reporter told her this service would be expensive; Ms. Budd–Falen asked her to provide the transcripts anyway; and the court reporter provided the service as requested. Budd–Falen filed a response asserting that Rocky Mountain failed to demonstrate the absence of a genuine issue of material fact on its contract claim and reasserting its agency claim.

[¶ 7] The district court held a scheduling conference and heard argument on the cross motions for summary judgment on March 10, 2004. At that time, Rocky Mountain moved to amend its complaint to add claims for unjust enrichment and promissory estoppel. The district court granted the motion, Rocky Mountain filed its amended complaint and Budd–Falen answered. The district court then gave the parties until April 27, 2004, to file briefs supplementing their summary judgment motions. Rocky Mountain filed a supplemental memorandum on April 28, 2004, in which it presented arguments in support of its unjust enrichment and promissory estoppel claims.[1] Budd–Falen did not file a supplemental memorandum pursuant to the district court's order. On June 2, 2004, however, Budd–Falen filed a motion for leave to file a response to Rocky Mountain's supplemental memorandum. The motion contained the response Budd–Falen sought leave to file. In the response, Budd–Falen argued summary judgment was not appropriate on Rocky Mountain's unjust enrichment claim because, under its agency claim, the clients, not the attorneys, were the party to be charged for the transcription services. Budd–Falen contended summary judgment likewise was improper on the promissory estoppel claim because the evidence was disputed as to whether Karen Budd–Falen promised Bunn the law firm would pay for the transcription services. Like its other filings up to this point, Budd–Falen's re-

sponse focused on the contention that its clients were responsible for payment for the services.

[¶ 8] On June 9, 2004, the district court conducted a pretrial conference. The following day, stating that the district court asked at the pretrial conference about the custom and usage for payments to court reporters in federal grazing appeals, Budd–Falen submitted supplemental authority citing 43 C.F.R. § 4.476 and contending under that regulation the federal government was responsible for the reporter's fees and Budd–Falen was responsible only for the actual cost of copies furnished at its request. This was the first time Budd–Falen cited the federal regulation as a basis for resolving the dispute. Rocky Mountain moved to strike the supplemental authority as untimely.

[¶ 9] Several days later the district court entered an order granting summary judgment in favor of Rocky Mountain and ordering Budd–Falen to pay $12,113.80, the total amount charged for the transcripts, plus interest in the amount of $2,409.14 and costs. In its order, the district court concluded a contract was formed between Budd–Falen and Bunn, the customary business practice was for the attorney to pay costs unless there was a specific agreement stating otherwise, the reasonable cost for the transcript was the $3.10 per page for testimony and $1.00 per page for concordance billed by Bunn, and Budd–Falen was liable for that amount plus interest and costs.

[¶ 10] Budd–Falen appealed to this Court from the summary judgment order. In its opening brief, filed November 24, 2004, Budd–Falen asserted three issues. As reflected in the statement of issues set out above in this decision, Budd–Falen's first issue was whether the federal regulations limited the law firm's liability to the actual cost of copies of the transcripts. In support of this argument, Budd–Falen cited the federal regulations and the Supremacy Clause of the United States Constitution. Its opening brief cited no other authority supporting its argument. Budd–Falen's second issue was whether the law firm, as an agent of

1. The certificate of service on the memorandum was dated April 27, 2004.

disclosed principals, was liable for any payment to Bunn.

[¶ 11] On January 21, 2005, after Rocky Mountain filed its appellate brief, Budd–Falen filed a twenty-seven page reply brief.[2] For the first time in the entirety of this case, Budd–Falen cited case law and other authorities in support of its argument that the federal regulations controlled the outcome of this dispute and limited its liability to the actual costs of copies of the transcript.[3]

[¶ 12] Three and a half months after filing its brief, after Rocky Mountain filed its responsive brief, and just five days before oral argument, Budd–Falen withdrew the second issue, the agency claim, from consideration by this Court. The only issues orally argued before this Court were Budd–Falen's claims that the federal regulations limited its liability to actual costs and questions of fact existed on the reasonableness of the charges.

## STANDARD OF REVIEW

[¶ 13] We review orders granting summary judgment according to the following standards:

> Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment using the same standards and materials as the lower court used. We do not accord deference to the district court's decisions on issues of law.

2. Budd–Falen's opening brief was eighteen pages.

3. Budd–Falen's opening brief contained a table of authorities consisting of two pages and twenty-four citations, only three of which related to

*Cordero Mining Co. v. United States Fidelity and Guar. Ins. Co.,* 2003 WY 48, ¶ 8, 67 P.3d 616, ¶ 8 (Wyo.2003) (citation omitted).

## DISCUSSION

### 1. The Reply Brief

[¶ 14] We begin our discussion with an issue not raised by either party. Wyo. R.App. P. 7.03 governs reply briefs and provides in pertinent part as follows:

> ... the reply brief shall precisely and concisely set forth on the first page those *new issues and arguments raised by the brief of the appellee* which are addressed in the reply brief. A reply brief is limited to such *new issues and arguments,* and a failure to comply with these requirements may subject the party to sanctions under these rules.

[¶ 15] This rule very clearly limits reply briefs to new issues and arguments raised in the appellee's brief. Rocky Mountain raised only one new issue in its brief, that is, whether it was entitled to an award of attorney's fees and costs for defending a frivolous appeal. Yet, Budd–Falen filed a lengthy reply brief in which it devoted nearly twenty-three pages to arguing, really for the first time, issues that it failed to adequately address either earlier in this appeal or in the district court. Only three pages of the reply brief are responsive to the new issue raised by Rocky Mountain.

[¶ 16] In *Furman v. Rural Electric Co.,* 869 P.2d 136, 139 (Wyo.1994), this Court disregarded a reply brief that did nothing more than re-emphasize and re-examine the arguments contained in the opening brief. We concluded the brief violated the clear directive of Rule 7.03 that reply briefs be limited to new issues and arguments. *See also Slagle v. Wyoming State Board of Nursing,* 954 P.2d 979, 980 (Wyo.1998). More recently, we said, "a reply brief is not a second chance to raise an issue or present argument that the appellant had the respon-

its claim that the federal regulations limited its liability to actual costs. In contrast, the table of authorities in Budd–Falen's reply brief consisted of five pages and seventy-three citations, twenty-five of which pertain to its federal regulations claim.

sibility, but failed, to address in its opening brief." *Ultra Resources, Inc. v. McMurry Energy Co.*, 2004 WY 121, ¶ 11, 99 P.3d 959, ¶ 11 (Wyo.2004).

[¶ 17] To the extent Budd–Falen's reply brief addresses the new issue of attorney's fees and costs for a frivolous appeal, we will consider it. We disregard the remainder of the reply brief because it presents argument that Budd–Falen had the opportunity and responsibility to address in its opening brief. Rule 7.03 does not allow a party who fails to cite authority or adequately present argument in its opening brief to cure these deficiencies by filing a reply brief.

### 2. *43 C.F.R. §§ 4.23 and 4.476(d)*

[¶ 18] The focus of Budd–Falen's claim in the district court was the issue it raised on appeal and then withdrew—as an agent for disclosed principals, the law firm was not liable for payment of the court reporter services. It was not until late in the proceedings, after the summary judgment hearing and the summary judgment briefs were filed, that Budd–Falen brought to the district court's attention the federal regulations upon which it relies now. Perhaps because the federal regulations were raised late and were not addressed in the summary judgment briefs or at the hearing, the district court's ruling focused on the disclosed principals argument and did not address the issue that has become the focus of Budd–Falen's claim on appeal. Generally, we are reluctant to consider issues not addressed by the district court. *See Wyoming Bank and Trust v. Haught*, 2003 WY 111, ¶ 15, 76 P.3d 301, ¶ 15 (Wyo.2003) (case remanded where claim was raised but district court did not address it.) In the present case, however, interpretation of the federal regulations is a matter of law and we proceed with the review.

[¶ 19] Budd–Falen asserts that it was not responsible for payment of transcription services provided by Bunn because the federal regulations governing the question provide that the reporter's fees shall be borne by the government and other parties requesting copies are obligated only for the cost of the copies. Budd–Falen contends, without cita-

tion of any authority other than the regulation, that the costs it was required to pay were the actual costs incurred by Bunn in e-mailing the copies to Karen Budd–Falen. Budd–Falen asserts, again without citation of authority, that the $3.10 per page Bunn billed for the e-mail copies constituted "fees" within the meaning of the regulation for which the government was responsible. Budd–Falen further asserts the district court erred in relying on state contract law principles because federal law controls.

[¶ 20] In response, Rocky Mountain argues first that this Court should not consider Budd–Falen's argument given its perfunctory citation to the regulations without citation to any other authority interpreting the language contained in them. Rocky Mountain also questions the relevancy of the federal regulations to the common law contract entered into by Budd–Falen and Bunn. Even assuming the regulations are relevant, Rocky Mountain asserts their plain language supports Bunn's right to charge and collect for the copies of the transcripts Budd–Falen ordered.

[¶ 21] The federal regulations Budd–Falen cites state as follows:

Hearings will be recorded verbatim and transcripts thereof shall be made when requested by interested parties, costs of transcripts to be born by the requesting parties. Fees for transcripts prepared from recordings by Office of Hearings and Appeals employees will be at rates which cover the cost of manpower, machine use and materials, plus 25 percent, adjusted to the nearest 5 cents. If the reporting is done pursuant to a contract between the reporter and the Department of the Interior Agency or office which is involved in the proceeding, or the Office of Hearings and Appeals, fees for transcripts will be at rates established by the contract.

43 C.F.R. § 4.23 (2005).

(d) The reporter's fees shall be borne by the Government. Each party shall pay for any copies of the transcript obtained by him. Unless the parties stipulate to a summary of the evidence, the Government

will file the original copy of the transcript with the case record.

43 C.F.R. § 4.476(d) (2005). Other than quoting these provisions, Budd–Falen presented no case law or other authority defining the terms "costs" and "fees" as used in the regulations. Budd–Falen also submitted no affidavit or other evidence showing what the custom and practice has been by the Bureau of Land Management, court reporters or other parties involved in similar federal administrative appeals. Budd–Falen provided this Court with no assistance in interpreting the particular federal regulations upon which it relies and our research discloses no cases or other authority defining the terms "costs" and "fees" as used in these regulations. We turn, therefore, to consideration of the meaning of the terms "costs" and "fees" in common usage.

[¶ 22] The fallacy we see in Budd–Falen's argument lies in its interpretation of the term "costs" as narrowly limited to the amount it actually cost Bunn (i.e. the out of pocket expense) to provide daily copies of the transcripts to Budd–Falen. The term "costs" generally has a broader meaning than that to which Budd–Falen would have us subscribe. Merriam–Webster Collegiate Dictionary (10th ed.) defines the term as:

1  a: the amount or equivalent paid or charged for something: PRICE b. the outlay or expenditure (as of effort or sacrifice) made to achieve an object

2: loss or penalty incurred especially in gaining something

3  *plural:* expenses incurred in litigation; *especially:* those given by the law or the court to the prevailing party against the losing party

Although Black's Law Dictionary (6th ed.) confines its definition of "costs" to: "a pecuniary allowance, made to the successful party (and recoverable from the losing party), for his expenses in prosecuting or defending an action," Black's recognizes in that context that the term may include "specified fees and certain court expenses" and is not limited to actual costs in the sense that Budd–Falen suggests. Fed.R.Civ.P. 54(d) expressly allows for the recovery of costs other than attorneys fees. Included among the costs

that a federal judge may order a prevailing party to pay under 28 USCS § 1920(2) (2005) are "fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case." "Costs" in federal litigation typically are defined by reference to 28 USCS § 1920 and, therefore, include items such as court reporter fees. *Knight v. Snap–On Tools Corp.,* 3 F.3d 1398, 1404 (10th Cir.1993). Given the meaning of "costs" in common usage and in federal proceedings, we hold the term "costs" includes the amount charged by Bunn for providing copies of the hearing transcripts on a daily basis.

### 3.  Reasonableness of Charges

[¶ 23] Budd–Falen next argues that questions of fact precluding summary judgment existed concerning the reasonableness of Bunn's bill. The crux of Budd–Falen's argument is that reasonableness is necessarily a question of fact. Rocky Mountain responds that Bunn presented evidence of reasonableness by way of affidavit, which evidence went unchallenged by Budd–Falen. Having failed to present evidence demonstrating a genuine issue of material fact, Rocky Mountain asserts, Budd–Falen left the district court no choice but to grant summary judgment on the issue of reasonableness.

[¶ 24] Ordinarily, the question of reasonableness is one of fact. *Gainsco Ins. Co. v. Amoco Production Co.,* 2002 WY 122, ¶ 10, 53 P.3d 1051, ¶ 10 (Wyo.2002). However, where there are no genuine issues of fact concerning reasonableness, summary judgment is appropriate. *Id.* Rocky Mountain submitted evidence that the amount charged by Bunn was reasonable. Budd–Falen presented no evidence to the contrary. Therefore, no genuine issue of material fact existed as to the reasonableness of the charges. We hold the district court properly granted summary judgment.

### 4.  Sanctions

[¶ 25] Rocky Mountain asserts it should be awarded attorney's fees and costs for defending a frivolous appeal pursuant to

W.R.A.P. 10.05, which provides in relevant part as follows:

> If the court certifies there was no reasonable cause for the appeal, a reasonable amount for attorney's fees and damages to the appellee shall be fixed by the appellate court and taxed as part of the costs in the case. The amount for attorneys' fees shall not be less than one hundred dollars ($100.00) nor more than five thousand dollars ($5,000.00). The amount for damages to the appellee shall not exceed two thousand dollars ($2,000.00).

Rocky Mountain asked for attorney's fees and costs based upon Budd–Falen's failure to provide authority or cogent argument supporting its claim under the federal regulations or to establish the existence of a genuine issue of material fact concerning customary business practices and the reasonableness of the court reporter's charges.

[¶ 26] We are reluctant to award attorney's fees and damages under Rule 10.05 and do so only in rare circumstances. *Drake v. McCulloh*, 2002 WY 50, ¶ 24, 43 P.3d 578, ¶ 24, (Wyo.2002). While we are unimpressed by Budd–Falen's minimal and belated efforts in this case, we are not prepared to say its appeal from a summary judgment order involving questions of reasonableness was without reasonable cause. However, the manner in which Budd–Falen approached this case from beginning to end has resulted in unnecessary legal expense. Its failure to investigate the practice for payment of transcripts in federal grazing appeals or to adequately present argument on the issue until late in these proceedings was problematic. Additionally, the withdrawal of its agency claim after the briefing was completed and only days before argument resulted in unnecessary expense. It is difficult to imagine what led to withdrawal of the issue then that could not have been discovered with the exercise of due diligence earlier. We hold that Rocky Mountain is entitled to attorney's fees and costs for the time and effort expended in responding to Budd–Falen's agency argument.

## CONCLUSION

[¶ 27] The district court's order granting summary judgment is affirmed. We impose sanctions upon Budd–Falen. Rocky Mountain shall submit a statement of costs and attorney's fees associated with responding to the agency argument. Upon review, we will award an appropriate amount in the form of sanctions.