2006 WY 132

COUNTRYWIDE HOME LOANS, INC., a Wyoming Corporation; and America's Wholesale Lender, a corporation, Appellants (Defendants),

v.

FIRST NATIONAL BANK OF STEAMBOAT SPRINGS, N.A., Appellee (Plaintiff).

The Bank of New York Trustee Under the Pooling and Servicing Agreement Series 1997; and Mortgage Electronic Systems, Inc., a corporation, Appellants (Defendants),

v.

First National Bank of Steamboat Springs, N.A., Appellee (Plaintiff).

Nos. 06–3, 06–4.

Supreme Court of Wyoming.

Oct. 17, 2006.

Representing Appellants: James R. Salisbury and Sean C. Chambers of Riske, Salisbury & Kelly, P.C., Cheyenne, Wyoming. Argument by Mr. Salisbury.

Representing Appellees: Thomas A. Thompson and Brandon W. Snyder of MacPherson, Kelly & Thompson, LLC, Rawlins, Wyoming. Argument by Mr. Thompson.

Before VOIGT, C.J., and GOLDEN, HILL *, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1]   In this mortgage foreclosure action, the district court declined to apply the doc-

* Chief Justice at time of oral argument.

trine of equitable subrogation and instead strictly applied Wyoming's "first in time is first in right" recording statute. The result was an order granting summary judgment in favor of First National Bank of Steamboat Springs, N.A. (First National Bank), holding its mortgage had priority over all other recorded liens and allowing it to proceed with foreclosure. In their appeal from the order, Countrywide Home Loans, Inc., (Countrywide) and America's Wholesale Lender (AWL) ask this Court to reverse the district court and adopt the doctrine of equitable subrogation so as to place Countrywide in the primary lien position formerly occupied by AWL. In a consolidated appeal from the same action, Mortgage Electronic Systems, Inc. (MES) and the Bank of New York Trustee Under the Pooling and Servicing Agreement Series 1997 (Bank of New York) ask this Court to reverse the district court's order denying a motion to set aside default judgments entered against them. We affirm both of the district court's orders.

## ISSUES

[¶ 2] Countrywide and AWL present the following issue:

Whether the District Court, Second Judicial District, Carbon County, Wyoming, correctly applied the doctrine of equitable subrogation to determine the relative priorities of the mortgages encumbering the subject property.

First National Bank restates the issue as follows:

I. Whether the District Court erred as a matter of law in declaring Appellee First National Bank's mortgage a valid, enforceable and superior lien to that of Appellant Countrywide's mortgage and that Countrywide was not entitled to be equitably subrogated to First National's priority?

II. Whether the District Court abused its discretion in denying a motion under W.R.C.P. 60(b) seeking to set aside the default judgments entered against Appellants Mortgage Electronic Systems and Bank of New York and denying to dismiss the complaint?

[¶ 3] The Bank of New York and MES present the following issue:

ISSUE I:

Whether the District Court, Second Judicial District, Carbon County, Wyoming, erred in Denying the Motion to Set Aside Default and Entry of Default of The Bank of New York Trustee under the Pooling and Servicing Agreement Series of 1997 and Mortgage Electronic Registration Systems and a companion Motion to Dismiss Complaint for Foreclosure of the Bank of New York Trustee under the Pooling and Servicing Agreement Series of 1997.

(a) Whether the District Court erred in denying the motion of The Bank of New York Trustee under the Pooling and Servicing Agreement Series of 1997 to set aside the entry of default and default judgment, and to dismiss the Complaint for Foreclosure.

(b) Whether the District Court erred in denying the motion of Mortgage Electronic Registration Systems to set aside the entry of default and default judgment.

## FACTS

[¶ 4] Elmer Lee Ketcham, Jr. and Anita Ketcham owned real property located in Carbon County, Wyoming. On November 12, 1997, they obtained a loan of $100,000 from AWL, which they secured by executing a mortgage on the Carbon County property. The AWL mortgage was recorded in the Carbon County clerk's office on November 13, 1997. AWL assigned the mortgage to the Bank of New York and the assignment was recorded in the clerk's office on May 26, 1998.

[¶ 5] On June 4, 2002, the Ketchams pledged the Carbon County property as collateral for a business loan made by First National Bank to Blue Gate West, a Colorado corporation in which the Ketchams were principles. This mortgage was recorded in the Carbon County clerk's office on July 22, 2002.

[¶ 6] On April 2, 2003, the Ketchams executed a third mortgage on the property in favor of Countrywide and MES in exchange

for a loan of $97,500. The purpose of this loan was to pay off the 1997 AWL mortgage. Countrywide obtained a title insurance commitment, which listed the 1997 AWL mortgage and the 2002 First National Bank mortgage as prior liens on the property. The 2003 Countrywide mortgage was recorded in the Carbon County clerk's office on April 15, 2003. The Ketchams used the funds borrowed from Countrywide to pay off the 1997 AWL mortgage, making the final payment in August of 2004.

[¶ 7] Meanwhile, in June of 2003, the Ketchams failed to make their monthly payment to First National Bank on the 2002 mortgage. Under the terms of the loan agreement, the failure to make the payment constituted a default entitling First National Bank to foreclose on the property. First National Bank filed a complaint for foreclosure naming the Ketchams, Countrywide, the Bank of New York, MES and AWL as defendants and claiming the First National Bank lien was the first and senior lien on the Carbon County property.

[¶ 8] MES and the Bank of New York did not answer the complaint in the time prescribed so First National Bank moved for entry of default against them. The clerk of the district court entered defaults against both non-responding defendants. First National Bank then moved the district court to enter a default judgment against the Bank of New York and MES, which motions the district court granted. The Bank of New York and MES filed motions to set aside the default judgments, which the district court denied.

[¶ 9] In the meantime, First National Bank filed a motion for summary judgment requesting the district court to declare as a matter of law that its lien on the Ketchams' Carbon County property was superior to the interests of all others; the Ketchams were in default; and First National Bank was entitled to foreclose. Countrywide and AWL also moved for summary judgment. They asked the district court to apply the doctrine of equitable subrogation and hold as a matter of law that the 2003 Countrywide mortgage was subrogated to the 1997 AWL mortgage, making the Countrywide mortgage superior

in priority to all encumbrances recorded after 1997.

[¶ 10] The district court issued a decision letter in which it declined to apply the doctrine of equitable subrogation. Instead, the court applied Wyo. Stat. Ann. § 34–1–121 (LexisNexis 2005) to hold that First National Bank's 2002 mortgage had priority over all other encumbrances on the Ketchams' property, including the 2003 Countrywide mortgage. The district court denied Countrywide's summary judgment motion and granted summary judgment in favor of First National Bank.

## STANDARD OF REVIEW

[¶ 11] Our standards for reviewing summary judgment orders are well established.

Summary judgment is appropriate when no genuine issue as to any material fact exists and the prevailing party is entitled to judgment as a matter of law. A genuine issue of material fact exists when a disputed fact, if it were proven, would have the effect of establishing or refuting an essential element of the cause of action or defense which the parties have asserted. We examine the record from the vantage point most favorable to the party who opposed the motion, and we give that party the benefit of all favorable inferences which may fairly be drawn from the record. We evaluate the propriety of a summary judgment using the same standards and materials as the lower court used. We do not accord deference to the district court's decisions on issues of law.

*Budd–Falen Law Offices, P.C. v. Rocky Mt. Recovery, Inc.*, 2005 WY 77, ¶ 13, 114 P.3d 1284, 1288 (Wyo.2005). We review the district court's decisions on issues of law *de novo*. *Reed v. Cloninger*, 2006 WY 37, ¶ 10, 131 P.3d 359, 364–65 (Wyo.2006). Because the question of whether equitable subrogation should be applied is one of law, we review the district court's decision in that regard *de novo*.

[¶ 12] The decision whether to set aside a default judgment under W.R.C.P. 60(b) rests in the sound discretion of the

court and an order denying such a motion will be reversed only upon a showing that the district court abused its discretion. *Chamberlain v. Ruby Drilling Co., Inc.*, 986 P.2d 846, 847 (Wyo.1999). An abuse of discretion occurs when a court:

> [a]cts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.

*Hodges v. Lewis & Lewis, Inc.*, 2005 WY 134, ¶ 11, 121 P.3d 138, 143 (Wyo.2005).

## DISCUSSION

### *Equitable Subrogation*

[¶ 13] Countrywide and AWL ask this Court to reverse the district court's ruling, adopt the doctrine of equitable subrogation and apply it in the instant case so that Countrywide's 2003 lien would be subrogated to the priority position of the 1997 AWL lien. They urge this Court to adopt the doctrine as set out in Restatement (Third) of Property (Mortgages) § 7.6 (1997):

> (a) One who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.
>
> (b) By way of illustration, subrogation is appropriate to prevent unjust enrichment if the person seeking subrogation performs the obligation:
>
> (1) in order to protect his or her interest;
>
> (2) under a legal duty to do so;
>
> (3) on account of misrepresentation, mistake, duress, undue influence, deceit, or other similar imposition; or
>
> (4) upon a request from the obligor or the obligor's successor to do so, if the

person performing was promised repayment and reasonably expected to receive a security interest in the real estate with the priority of the mortgage being discharged, and if subrogation will not materially prejudice the holders of intervening interests in the real estate.

[¶ 14] In declining to apply the Restatement, the district court relied on § 34–1–121, which provides in relevant part as follows:

> **§ 34–1–121. Recorded instrument as notice to subsequent purchasers; recordation of instruments issued by United States or state of Wyoming.**
>
> (a) Each and every deed, mortgage, instrument or conveyance touching any interest in lands, made and recorded, according to the provisions of this chapter, shall be notice to and take precedence of any subsequent purchaser or purchasers from the time of the delivery of any instrument at the office of the register of deeds (county clerk), for record.

Reading this provision strictly to mean that lien priority is determined by the date of recording, the district court held First National Bank's 2002 mortgage had priority over Countrywide's subsequent 2003 mortgage.

[¶ 15] In reaching this result, the district court concluded application of the Restatement was not appropriate:

> where a lender has actual and constructive notice of a junior mortgagee and could have taken any one of a number of steps to protect its interests. [Countrywide] could have asked for a subordination agreement or an assignment of the AWL mortgage; it did neither of these things and now seeks to rely upon the concept that it "expected" to step into AWL's priority without anything more. The argument goes that, in recognizing the doctrine of equitable subrogation, [First National Bank] is not prejudiced and "loses nothing" because it remains second in priority (before it was behind AWL; now it would be behind [Countrywide] ). But, this Court believes equity requires looking at things from a different perspective: [Countrywide] entered into the third mortgage on the prop-

erty with knowledge of [First National Bank's] prior loan to Ketcham. Why should [Countrywide] get the benefit (and be unjustly enriched) by leaping over [First National Bank] to assume AWL's priority status. [Countrywide] has done nothing to deserve this advantage.

[¶ 16] Countrywide argues the district court's approach does not account for the equities of this case and ignores the purpose equitable "subrogation serves in the modern mortgage re-financing context." Countrywide contends the modern trend among courts is to apply equitable subrogation as set forth in the Restatement. Countrywide asserts the district court's approach is contrary to the purpose served by applying the doctrine because: 1) the Ketchams, Countrywide and AWL reasonably expected Countrywide would have first priority; 2) Countrywide would not have agreed to re-finance the 1997 AWL mortgage if it had known it would not have first priority; 3) First National Bank's position would not change if subrogation were allowed; 4) First National Bank should not be moved forward in priority simply because Countrywide knew of the 2002 mortgage when it paid off the AWL mortgage; 5) First National Bank accepted the risks inherent in accepting a second priority lien when it demanded additional collateral from the Ketchams; and 6) giving the 2002 mortgage priority results in an inappropriate windfall to First National Bank. Before addressing these assertions, we consider § 34-1-121 and our precedent on the doctrine of equitable subrogation.

[¶ 17] By statute and case decision, Wyoming is a filing date priority jurisdiction. Section 34-1-121; *Barnhart Drilling Co., Inc. v. Petroleum Fin., Inc.*, 807 P.2d 411, 413 (Wyo.1991) citing *Marple v. Wyo. Prod. Credit Ass'n*, 750 P.2d 1315 (Wyo.1988); *Crozier v. Malone*, 366 P.2d 125 (Wyo.1961). That is, as the Wyoming legislature expressly provided in § 34-1-121, a mortgage properly recorded in the county clerk's office provides notice to subsequent purchasers and takes precedence over later conveyances.[1] As stated in *Crozier*, 366 P.2d at 127, a subsequent purchaser (or mortgagee) has constructive notice of any burden upon title from the date of recordation.

[¶ 18] Countrywide asks this Court to recognize an equitable exception to Wyoming's "first in time" statutory provision. Specifically, Countrywide asks us to recognize the doctrine of equitable subrogation as set forth in the Restatement and apply it in this case so Countrywide, by extending a loan to the Ketchams in 2003 to pay off their 1997 mortgage with AWL, is subrogated to AWL's primary lien position. In other words, by executing the 2003 mortgage which allowed the Ketchams to pay off the 1997 mortgage, Countrywide seeks to stand in the shoes of AWL and be given priority over all post–1997 encumbrances.

[¶ 19] This Court has not previously considered the Restatement version of equitable subrogation. However, in addressing the concept of subrogation, this Court long ago stated:

> The right of subrogation may arise and sometimes must arise from contract. This is conventional subrogation. The right is sometimes given in the absence of contract, is then a creation of the court of equity, and is given when otherwise there would be a manifest failure of justice. This is legal subrogation. It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it, though it is not exercised in favor of a mere intermeddler. This principle, adopted from the Roman law and at first sparingly exercised, has come to be one of the great principles of equity of our jurisprudence, and courts incline to extend it rather than restrict it. One instance in which legal subrogation is applied is in connection with the protection of a lien, and the rule is universal that one who has an interest in property by lien or otherwise, in making payment of prior liens,

1. As reflected in the quote in ¶ 14 of this opinion, § 34-1-121 provides a recorded mortgage has precedence over subsequent "purchasers." Section 34-1-101 defines "purchasers" as: "every person to whom any estate or interest in real estate shall be conveyed for a valuable consideration, and also every assignee of a mortgage or lease, or other conditional estate."

including taxes, is not a mere volunteer, and that he will be entitled, upon payment of a superior lien in order to protect his own lien, to be subrogated to the rights of the superior lienholder.

*Wyoming Bldg. & Loan Ass'n v. Mills Const. Co.*, 38 Wyo. 515, 269 P. 45, 48–49 (1928) (citations omitted).

[¶ 20]  We applied this reasoning in *Gaub v. Simpson*, 866 P.2d 765, 768 (Wyo.1993) to uphold the application of legal subrogation [2] under the following facts: Gaub sold real property to Cook; Simpson purchased Cook's interest in the property by paying Gaub the amount Cook owed; Gaub failed to record the deed to Simpson; with Gaub still appearing as the record owner, the IRS filed an income tax lien against the property for income taxes Gaub owed; Simpson paid the taxes in order to avoid the lien on his property; and Simpson sought reimbursement from Gaub. In upholding the application of equitable subrogation to these facts, we said:

> [W]e are satisfied with the legal propriety of the ruling by the district court, in accordance with Wyoming law, that Simpson paid a tax bill, which Gaub owed, in order to protect Simpson's property from an IRS lien. The law justifies this action on the part of Simpson; makes Simpson a subrogee to the rights of the IRS; and demonstrates that, in pursuing the course he chose, Simpson did not act as a volunteer.

*Gaub*, 866 P.2d at 768. We cited with approval the following excerpt from 73 Am. Jur.2d, *Subrogation*, § 25, "Persons acting in self-protection," p. 614,

> The right of subrogation is not necessarily confined to those who are legally bound to make the payment, but extends as well to persons who pay the debt in self-protection, since they might suffer loss if the obligation is not discharged. A person who has an interest to protect by making the payment is not regarded as a volunteer.  * * *  The extent or quantity of the subrogee's interest which is in jeopardy is

not material. If he had any palpable interest which will be protected by the extinguishment of the debt, he may pay the debt and be entitled to hold and enforce it just as the creditor could.  * * *  It would seem that one acting in good faith in making his payment, and under a reasonable belief that it is necessary to his protection, is entitled to subrogation, even though it turns out that he had no interest to protect.

*Gaub*, 866 P.2d at 768.

[¶ 21]  Thus, we have recognized equitable subrogation in Wyoming as a creation of courts of equity to prevent manifest injustice. *Wyo. Bldg. & Loan*, 269 P. at 48–49. We have specifically applied it to compel payment of a debt by one who in justice, equity, and good conscience ought to pay it and to allow one who pays a superior lien in order to protect his own lien to be subrogated to the rights of the superior lien holder. *Id.*; *Gaub*, 866 P.2d at 768. We have recognized the appropriateness of the doctrine where one pays the debt of another under a reasonable belief that such payment is necessary for his own protection. *Id.* We have not, however, applied the doctrine of equitable subrogation as set forth in the Restatement to allow a refinancing mortgagee to step into the shoes of a prior mortgagee for purposes of obtaining lien priority.

[¶ 22]  Having considered our statute and the cases from other states in which courts have applied equitable subrogation in the context of mortgage re-financing, we decline to adopt the Restatement. Unlike the trend in other courts, we are not persuaded any manifest injustice results from applying the express language of § 34–1–121 and adhering to the clear legislative intent that lien priority in Wyoming is to be determined by the date of recording. Here, the AWL mortgage was recorded in 1997, the First National Bank mortgage was recorded in 2002 and Countrywide's mortgage was re-

---

**2.** Other courts and the Restatement have suggested the term "legal subrogation" is misleading. The term came into common usage because subrogation arises by "operation of law, that is to say, it is created by the legal consequences of the acts and relationships of the parties." *Bank of New York v. Nally*, 820 N.E.2d 644, 651 (Ind. 2005). We agree that the concept discussed in the instant case is more appropriately termed "equitable subrogation" because it is subrogation imposed as an equitable remedy. Restatement, § 7.6, Comment a, p. 509.

corded in 2003. Countrywide knew of the existence of First National Bank's lien before it extended the loan to the Ketchams. Thus, Countrywide knew First National Bank had a prior recorded lien on the property when it executed the 2003 mortgage. Countrywide was charged with knowing Wyoming is a "first in time" jurisdiction. *United Pacific Insurance Co. v. Wyoming Excise Tax Division, Dept. of Revenue and Taxation*, 713 P.2d 217, 226 (Wyo.1986). We are charged with the duty of giving effect to the statutes our legislature has enacted. Where the language of a statute is plain and unambiguous and conveys a clear and definite meaning, the court has no right to look for and impose another meaning, but has the duty to give full force and effect to the legislative product. *Thomson v. Wyoming In–Stream Flow Comm.*, 651 P.2d 778 (Wyo.1982). Contrary to Countrywide's assertion, it had no reason to expect under Wyoming law that its 2003 mortgage would be given priority over First National Bank's 2002 mortgage. Although Countrywide makes the policy argument that equitable subrogation will make refinancing more readily available to the public and thereby, serves the public interest, those arguments are properly directed to the legislature. In addition, the primary purpose of our recording statute is to secure certainty of title. *Condos v. Trapp*, 717 P.2d 827, 832 (Wyo.1986). This countervailing public policy interest in clarity and certainty in matters of land title arguably outweighs the interests of private lending institutions which can be protected by simple due diligence.

[¶ 23]  As this Court stated in *Wyoming Bldg. & Loan Ass'n*, 269 P. at 48, equitable subrogation is "a creation of the court of equity, and is given when otherwise there would be a manifest failure of justice." "It is a mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity and good conscience ought to pay it, though it is not exercised in favor of a mere intermeddler." *Id.* These factors, which may compel application of the doctrine of equitable subrogation in other contexts, simply are not present in the case of a mort-

gagee who agrees to refinance a prior mortgage. In this context, the mortgagee does not pay the debt (or extend the loan) because "in justice, equity and good conscience he ought to pay it." Nor in the context of mortgage re-financing does the mortgagee pay the debt because, as in *Gaub*, he must do so in order to protect his own interest. To the contrary, the mortgagee who refinances a prior mortgage more closely resembles a volunteer or intermeddler in whose favor courts have not been inclined to apply equitable subrogation. In our view equitable subrogation simply has no application where a financial institution extends a loan for the purpose of enabling a mortgagor to pay off an existing mortgage, knowing that a subordinate lien exists on the real estate. Other mechanisms are available for a re-financing lender to obtain first priority without invoking equity to achieve that result.[3]

### Default judgment

[¶ 24]  MES and the Bank of New York contend the district court abused its discretion in denying their motions to set aside the entry of default judgment. The procedure for setting aside an entry of default is set forth in W.R.C.P. 55(c):

> For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).

W.R.C.P. 60(b) provides the procedure for setting aside a default judgment:

> On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has

---

3. The district court mentioned a subrogation agreement or an assignment of the AWL mort- gage as two possibilities for achieving a first priority lien.

been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

[¶ 25] MES asserts the district court should have set aside the default judgment because its failure to answer the complaint was attributable to mistake, inadvertence and/or excusable neglect. Specifically, MES contends it mistakenly believed Countrywide was protecting its interests by filing an answer on its behalf.

[¶ 26] In *Multiple Resort Ownership Plan, Inc. v. Design–Build–Manage, Inc.*, 2002 WY 67, ¶ 14, 45 P.3d 647, 652 (Wyo.2002), we held the defendant's belief that he had been granted an extension of time in which to file an answer did not constitute mistake, inadvertence or excusable neglect entitling him to an order setting aside default judgment. We said it was not reasonable for the defendant to assume he had an open extension of time in which to file an answer based solely upon a phone conversation with no verbal or written confirmation from the plaintiff and in the face of the explicit requirements of the Wyoming Rules of Civil Procedure. We said:

> The concept of time limitations for filing pleadings with the court is a fairly basic one of legal practice. [The defendant]'s reliance on his belief in an open-ended extension was simply not reasonable.

*Id.*

[¶ 27] We similarly find unreasonable MES' expectation and belief that Countrywide was representing its interest and filing an answer on its behalf. The only factor MES mentioned to support this belief is that the two entities shared identity of interests. Although MES claims in its appellate brief that it notified Countrywide of the need for Countrywide to defend the case, MES does not indicate Countrywide agreed to assume its defense. Absent Countrywide's express agreement to provide a defense for MES, MES' "expectation and belief" that it would do so was not reasonable. Identity of interest alone simply did not warrant a reasonable belief that Countrywide was protecting MES' interests by filing an answer on its behalf.

The district court did not abuse its discretion in denying MES' motion for relief from the default judgment.

[¶ 28] For its claim of error, the Bank of New York asserts its only connection to the subject matter of this action was as assignee of the 1997 AWL mortgage, which mortgage was fully released and satisfied two and one half months after First National Bank filed its complaint for foreclosure. The Bank of New York asserts it had no involvement or interest in the 2002 First National Bank mortgage or the 2003 Countrywide mortgage. Because it was not an interested party once the 1997 mortgage was released and satisfied, the Bank of New York argues, it was entitled to have the default judgment set aside on the grounds set forth in Rule 60(b)(6). That subsection of the rule allows a district court in its discretion to relieve a party from judgment for "any other reason justifying relief from the operation of the judgment."

[¶ 29] The difficulties we have with this argument are twofold: first, whether or not the Bank of New York had direct interest or involvement in this action, it was named as a defendant, served with the complaint and required to answer within the time contemplated by our rules. The Bank of New York did not answer and provides no explanation for why it did not. Second, the determination whether to grant relief from judgment under Rule 60(b) is, as we have said, a discretionary one. We reverse discretionary determinations of a district court only for abuse of discretion. We have repeatedly said an abuse of discretion occurs when a district court

> [a]cts in a manner which exceeds the bounds of reason under the circumstances. In determining whether there has been an abuse of discretion, the ultimate issue is whether or not the court could reasonably conclude as it did. An abuse of discretion has been said to mean an error of law committed by the court under the circumstances.

*Hodges*, ¶ 12, 121 P.3d at 143. We are aware of no authority holding that a district court commits an error of law or exceeds the

bounds of reason in declining to set aside a default judgment against a defendant who failed to answer a properly served complaint. Even accepting the Bank of New York's claim that it had no interest or involvement in the subject matter of this foreclosure action, the proper course for it to take was to answer the complaint and/or move for dismissal. In light of the Bank of New York's failure to follow elementary legal procedure, we are hard pressed to conclude the district court exceeded the bounds of reason in denying the motion to set aside default judgment filed months later.

[¶ 30] Affirmed.