2005 WY 107

**Dayelle Fargey BRADLEY, Appellant (Defendant),**

v.

**Robert H. BRADLEY, Appellee (Plaintiff).**

No. 04–139.

Supreme Court of Wyoming.

Aug. 31, 2005.

Representing Appellant: Jessica Rutzick, Jackson, Wyoming.

Representing Appellee: Kenneth S. Cohen, Jackson, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

HILL, Chief Justice.

[¶ 1] Appellant, Dayelle Fargey Bradley (Wife), seeks review of an order of the district court that denied her petition to modify a divorce decree, as well as the denial, in effect, of her motion to enforce the existing divorce decree's terms. Appellee, Robert H. Bradley (Husband), contends that the district court acted properly in denying Wife's petition and motion. We will reverse and remand with directions that the district court modify its decree of divorce to grant the divorce and reserve ruling on any decision with regard to the equitable distribution of marital property until a hearing can be held pursuant to W.R.C.P. 55(b).

## ISSUES

[¶ 2] Wife raises these issues:

1. Did the District Court commit reversible error when it granted [Husband's] Decree of Divorce as a default judgment in violation of [Wife's] right of due process under Article 1, § 6 of the Constitution of the State of Wyoming and the Fourteenth Amendment of the Constitution of the United States, when such Decree of Divorce granted relief beyond that requested

by [Husband's] complaint and without further notice to [Wife]?

2. Did the District Court commit reversible error when it denied [Wife's] Petition to Modify Decree of Divorce where the Decree was based upon a substantive mistake of law?

3. Did the District Court commit reversible error by denying [Wife's] Petition to Modify the Decree of Divorce where [Wife] established sufficient grounds for modification pursuant to Wyoming Statute § 1–16–401 and Wyoming Rules of Civil Procedure, §§ 55(c) and 60(b)?

4. Did the District Court commit reversible error by refusing to grant [Wife's] Motion to Enforce Divorce Decree where [Husband] did not seek relief from the Decree and did not submit any evidence supporting grounds for relief from the Decree or grounds to contravene the obligations set forth in the Decree?

Husband responds with a substantially different and much longer list of proposed issues:

1. When the parties had a prenuptial agreement providing that its validity, execution, enforcement and construction should be governed by Minnesota law but that it shall be subject to modification by mutual agreement made in writing and executed and acknowledged by the parties, and when the parties subsequently signed a handwritten agreement modifying the prenuptial agreement, should the enforceability of that handwritten amendment be struck down as an improper modification under Minnesota law or be upheld as a proper modification complying with the explicit provision in the prenuptial agreement governing modification?

2. Should W.S. § 1–16–401 be interpreted as allowing the reopening of a judgment under circumstances not justified under Rule 60(b), W.R.C.P.? Does such an interpretation raise serious issues of separation of powers?

3. Should a divorce decree granting relief different than that requested in the Complaint be barred by Rule 54(c), W.R.C.P., when the complaint asked for a decree enforcing the terms of the parties'

prenuptial agreement, but subsequently the parties changed the agreement and [Husband] was requesting relief consistent with the change?

4. Did the trial court err in refusing to reopen a default judgment when [Wife] failed to enter an appearance or even to retain counsel for over six months after being served with a copy of the complaint, and when [Wife] did not have a meritorious defense?

5. Is [Wife] entitled to reopen the divorce decree based on an alleged mistake by the trial court under Rule 60(b)(1), W.R.C.P., when [Wife's] motion to reopen the judgment was filed more than thirty days after entry of the judgment?

6. When the parties had a prenuptial agreement under which [Wife] was entitled to $100,000.00 upon divorce, and when [Wife] signed a handwritten amendment to the prenuptial agreement agreeing that she would not be entitled to the $100,000.00 if she engaged in adultery, and when [Husband] subsequently confronted [Wife] with his knowledge that she was engaging in adultery and she acknowledged it, and when [Wife] never entered an appearance or took any action to defend her interests for over six months after being served with the divorce complaint seeking enforcement of the terms of the parties' premarital agreement, did the district court deny [Wife] due process of law by entering a divorce decree enforcing the premarital agreement as amended by the parties' handwritten agreement?

7. When the parties had a prenuptial agreement defining the amounts to which each party was entitled in case of divorce, did the district court have to hold a hearing to determine damages after entry of default against [Wife]?

8. Does this Court have any basis for reviewing the [district] court's decision denying [Wife's] motion to enforce the divorce decree, when that motion was based on [Wife's] assertion that she was not cohabiting with a third party, and when no transcript or statement of the evidence is available?

In her reply brief, Wife poses these additional matters:

1. Are the requirements of both Article 14 (Modification) and Article 15 (Interpretation) of the Antenuptial Agreement applicable to a purported post nuptial amendment to the Agreement?

a. Is the purported post nuptial amendment valid when it does not conform to the requirements of either of those two Articles?

2. Must a motion under W.R.C.P. 60(b)(1) seeking to set aside a default judgment based upon mistake of substantive law be filed within thirty days of the entry of the judgment?

3. Is the record sufficiently complete for purposes of considering the propriety of the Trial Court's denial of [Wife's] Motion to Enforce Divorce Decree?

## FACTS AND PROCEEDINGS PERTINENT TO THIS APPEAL

[¶ 3] On January 28, 2003, Husband filed a complaint for divorce. The complaint is notable for its brevity. It informed the district court that the parties were married on July 29, 2001, that irreconcilable differences had arisen between the parties to the marriage, and that the parties had entered into a prenuptial agreement dated July 24, 2001, that governed the rights, responsibilities, and obligations of the parties in the event of divorce, legal separation, or death. Husband asked the district court to approve and adopt the terms of the prenuptial agreement and incorporate them into the divorce decree. The prenuptial agreement was not attached to the complaint.

[¶ 4] Wife accepted service of the complaint for divorce in a document prepared by Husband's attorney. She signed the acceptance of service on February 25, 2003, and it was filed in the district court on March 6, 2003.[1] The acceptance of service also included these provisions:

2. I understand that I have the right to be formally served with a copy of the Summons and Complaint in this civil action, and I expressly waive any right I may have to be served in such manner.

3. I understand that I am required to file and serve an Answer to the Complaint within thirty (30) days from the above date or otherwise formally respond in the civil action commenced against me in the Teton County District Court. I understand that if I fail to answer or otherwise plead, a judgment by default will be taken against me for the relief demanded in the complaint, and I will be prohibited from protecting or enforcing any rights I have in connection with the divorce proceeding.

[¶ 5] Wife did not answer the complaint, and Husband filed a request for entry of default on April 23, 2003. Default is governed by W.R.C.P. 55:

(a) *Entry.*—When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default.

(b) *Judgment.*—Judgment by default may be entered as follows:

(1) By the Clerk.—When the plaintiff's claim against a defendant is for a sum certain, or for a sum which can by computation be made certain, the clerk upon request of the plaintiff and upon affidavit of the amount due shall enter judgment for that amount and costs against the defendant, if the defendant has been defaulted for failure to appear and is not a minor or an incompetent person;

(2) By the Court.—In all other cases the party entitled to a judgment by default shall apply to the court therefor; but no judgment by default shall be entered against a minor or an incompetent person unless represented in the action by a guardian, guardian ad litem, trustee, conservator, or other such representative who has appeared therein. If the party against whom a judgment

---

1. W.R.C.P. 3(b) provides that: "The voluntary waiver, acceptance or acknowledgment of service, or appearance by a defendant shall be the same as personal service on the date when such waiver, acceptance, acknowledgment or appearance is made."

by default is sought has appeared in the action the party (or, if appearing by representative, the party's representative) shall be served with written notice of the application for judgment at least three days prior to the hearing on such application. If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary and proper and shall accord a right of trial by jury to the parties when and as required by any statute.

(c) *Setting aside default.*—**For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).**

(d) *Plaintiffs; counterclaimants; cross-claimants.*—The provisions of this rule apply whether the party entitled to the judgment by default is a plaintiff, a third-party plaintiff, or party who has pleaded a cross-claim or counterclaim. In all cases a judgment by default is subject to the limitations of Rule 54(c). [Emphasis added.]

[¶ 6] The clerk of the district court filed an Entry of Default on April 23, 2003. On September 4, 2003, Husband filed an "affidavit" in the district court that mirrored his complaint in many respects, but added that the parties had reconciled to some degree in the interim. Further, he averred that during the brief period of reconciliation, the parties had amended their prenuptial agreement on May 18, 2003. The affidavit also alleged that the prenuptial agreement provided for an initial payment of $100,000.00 from Husband to Wife, but the amendment deleted that obligation if "the reinstatement of the divorce proceeding" was caused by an act of adultery committed by Wife. Husband alleged that Wife had committed adultery. It is apparent that Husband intended this affidavit to be a "reinstatement" of the original divorce proceedings but with some additional matters thrown in. The affidavit was not served on

Wife. Neither the prenuptial agreement, nor the amendment to the prenuptial agreement, was attached to the affidavit, nor were they otherwise of record at this stage of the case.

[¶ 7] On September 8, 2003, the district court entered a Decree of Divorce that had been prepared by Husband's attorney and which was consistent with Husband's supplemental pleading ("affidavit") of September 4, 2003. Wife was not given notice that this proceeding was scheduled, nor was the proposed form of decree offered to her for her approval. The decree recited some of the pertinent terms of the prenuptial agreement, including that Husband was to transfer to Wife the parties' real property in Indio, California (as well as much personal property located at that site), that Husband was to pay Wife $100,000.00 upon dissolution of the marriage, and that Husband was to pay Wife $10,000.00 per month for a period of two years. Both parties agree that these provisions accurately reflect the original prenuptial agreement.

[¶ 8] The district court purported to have reviewed the prenuptial agreement and found it fair and reasonable. Still, the record does not reflect that the agreement was a part of the record at this point in the proceedings, other than that Husband quoted portions of it in the proposed form of divorce decree that he submitted to the district court and which the district court signed and entered. The decree also made reference to the amendment to the prenuptial agreement, i.e., that Wife would not receive the $100,000.00 payment if she committed adultery, and that based upon Husband's affidavit, Wife waived or forfeited that payment by committing adultery. The complete amendment itself was still not of record at this point in the proceedings either. The divorce decree was not provided to Wife upon its entry.

[¶ 9] On November 3, 2003, Wife filed a motion to modify the divorce decree. Attached to this motion was Wife's affidavit giving her side of the story, copies of the prenuptial agreement (without attachments) and the amendment to it, as well as a copy of an October 2, 2003 letter in which Husband

informed Wife that a divorce decree had been entered to the effect that she would not receive the $100,000.00 payment contemplated by the original prenuptial agreement.

[¶ 10] On December 17, 2003, Wife filed a motion to enforce the divorce decree, alleging in pertinent part that Husband had not made the $10,000.00 a month payments to her as required by the decree that was entered on September 8, 2003.[2] On January 6, 2004, Husband filed a response to that motion, stating in pertinent part that he refused to make the $10,000.00 per month payments because Wife was cohabiting with a third party, and the premarital agreement did not require him to make those payments if she was so cohabiting.

[¶ 11] By order entered on January 16, 2004, the district court set Wife's petition to modify the divorce decree for hearing on March 1, 2004. Each party filed a brief prior to the hearing. The matter was heard on March 1, 2004, but was not reported. Neither a transcript of the hearing, nor a statement of the evidence or proceedings contemplated by W.R.A.P. 3.03, is included in the record. By order entered on March 12, 2004, the district court denied Wife's petition to modify the divorce decree. It appears from the record that the district court did not rule on, or specifically dispose of, Wife's motion to enforce the provisions of the September 8, 2003, divorce decree. Although Wife sought clarification on that issue, the district court did not further address it, apparently because it believed it did not have jurisdiction to do so because a notice of appeal had been filed. On April 5, 2004, Wife filed a notice of appeal seeking review of the district court's March 12, 2004 order denying modification of the divorce decree, as well as seeking review

of her motion to enforce the decree that had by then been deemed denied by the district court's inaction.

## DISCUSSION

[¶ 12] We begin our analysis by addressing Wife's contention that the proceedings in the district court denied her rights to due process of law. We agree with Wife's contentions, and we do so for reasons that can be stated fairly simply and directly. Wife does not challenge the entry of default. Indeed, it was clear from the outset that she anticipated that default would be entered against her and that a decree of divorce would be entered in conformity with Husband's complaint upon her failure to answer the complaint, i.e., that the terms of the original prenuptial agreement would govern the terms of the decree of divorce. Husband filed a pleading on September 4, 2003, that was entitled "Affidavit of Robert H. Bradley Regarding Factual Basis for a Decree of Divorce." In reality, that document was a supplemental pleading as contemplated by W.R.C.P. 15(d):

(d) *Supplemental pleadings.*—Upon motion of a party the court may, upon reasonable notice and upon such terms as are just, permit the party to serve [3] a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented. Permission may be granted even though the original pleading is defective in its statement of a claim for relief or defense. If the court deems it advisable that the adverse party plead to the supplemental pleading, it shall so order, specifying the time therefor.

---

2. Wife also asserted that Husband had refused to transfer the Indio, California home to Wife. However, we are advised from the briefs and the oral argument that the transfer has subsequently taken place.

3. W.R.C.P. 5(a)(1) provides:
   (a) *Service; when required.*—
   (1) Except as otherwise provided in these rules, every order required by its terms to be served, every pleading subsequent to the original complaint unless the court otherwise orders because of numerous defendants, every paper relating to discovery required to be served upon a party unless the court otherwise orders, every written motion other than one which may be heard ex parte, and every written notice, appearance, demand, offer of judgment, designation of record on appeal, and similar paper shall be served upon each of the parties. **No service need be made on parties in default for failure to appear except that pleadings asserting new or additional claims for relief against them shall be served upon them in the manner provided for service of summons in Rule 4.** [Emphasis added.]

[¶ 13] The principal function of Husband's affidavit was to allege that the original prenuptial agreement had been amended by the parties and to apply to the court to enter a default judgment consistent with the amended agreement. The district court treated the affidavit as a request that a default judgment/decree be entered, as provided for in W.R.C.P. 55(b)(2), even though Wife had not been served with the supplemental pleading or otherwise been given notice of the proceedings and the relief requested went beyond that sought in the original complaint. Because the affidavit was not served on Wife, we conclude that the district court could not consider it in entering the divorce decree,[4] nor can we consider it in resolving this appeal.

[¶ 14] We dealt with a similar situation in *Spitzer v. Spitzer*, 777 P.2d 587 (Wyo.1989). In that case, the district court entered a default judgment in a divorce action because the husband had refused to comply with the court's discovery orders. However, it also awarded the wife certain real and personal property which went beyond the general relief sought in the complaint without any evidentiary proceedings. This Court held "Only in those situations where the damages sought are liquidated and claimed in the complaint may the court grant relief without further proceedings." *Id.* at 592. Where damages or relief are unliquidated or not specified with certainty in the complaint, further proceedings are indicated pursuant to W.R.C.P. 55(b)(2). *See also Halberstam v. Cokeley,* 872 P.2d 109 (Wyo.1994). Specifically, in issuing a divorce decree pursuant to a default judgment, we held the district court was required to comply with statutory criteria applicable to the distribution of marital property. *Spitzer,* 777 P.2d at 593. In order to accomplish its function of making a just and equitable distribution, the district court must have an evidentiary basis to support the exercise of its discretion.

[¶ 15] As we have noted above, the record was barren of much in the way of evidentiary material. The only thing that was certain and properly before the district court at the time the decree was entered was that Husband and Wife agreed to the entry of a divorce decree that was in conformity with their prenuptial agreement. However, the agreement itself had not been provided to the court although its order recited that it had reviewed the agreement and found it to be "fair and reasonable and that it was entered into voluntarily and after full disclosure of financial assets." Husband's improper and immaterial affidavit, which was not consistent with Husband's complaint, should have alerted the district court that the relief requested was unliquidated and different from that claimed in the original complaint and should not have been granted without notice to the Wife and without further proceedings.

[¶ 16] In large part, Wife premised her motion to modify the divorce decree on Wyo. Stat. Ann. § 1–16–401 (LexisNexis 2005). That statute permits a district court to modify its own judgment if any of the statutory grounds are met. Here, the principal ground for modification was that the judgment was a mistake. W.R.C.P. 60(b), which provides for relief from a judgment or order, serves many of the same purposes as does the above-cited statute. It provides:

> (b) *Other Reasons.*—On motion, and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or

4. Husband's failure to serve Wife with the supplemental pleading fully establishes that Wife was denied due process of law (notice) with respect to the entry of the September 8, 2003, divorce decree. As an aside, we take note that Husband contends that Wife was not entitled to notice of that hearing because she had not "appeared." Although we need not address this contention dispositively, even though Wife did not answer the complaint, her acceptance of service very likely constituted an "appearance" and, therefore, she was entitled to notice of the September 8, 2003, proceedings in any event.

*See MROP v. Design–Build–Manage, Inc.,* 2002 WY 67, ¶¶ 17–18, 45 P.3d 647, 653 (Wyo.2002); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2686 at 43 (1998) ("Defendant need not respond directly to the complaint in order to be deemed to have made an appearance. An appearance 'may arise by implication from defendant's seeking, taking, or agreeing to some step or proceeding in the cause beneficial to himself or detrimental to plaintiff other than one contesting only the jurisdiction * * *.' "); 6 C.J.S. *Appearances,* §§ 18 and 19 (2004).

proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding as provided by statute, or to grant relief to a party against whom a judgment or order has been rendered without other service than by publication as provided by statute. Writs of coram nobis, coram vobis, audita querela, and bills of review and bills in the nature of a bill of review, are abolished, and the procedure for obtaining any relief from a judgment shall be by motion as prescribed in these rules or by an independent action.

[¶ 17] Although Husband contends that § 1–16–401 is a legislative invasion of the court's power to establish rules of procedure for the district court, we perceive that the statute, at least so far as Wife seeks its application here, does not conflict in any way with Rule 60, and Rule 60 specifically provides that: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding as provided by statute...." We conclude that it was an abuse of discretion to deny Wife's petition to modify the divorce decree because the mistake that the district court was required to correct was readily evident from the record, i.e., the relief granted by the default judgment was not consistent with that requested in the original complaint.

[¶ 18]   Moreover, we have held:

An antenuptial agreement is a contract entered into between two people in contemplation and consideration of marriage. The marriage provides the requisite consideration to bind both parties. The primary purpose of such agreements is to define and fix the respective property rights of the spouses before the marriage. Challenges to such agreements generally arise upon the death of one of the parties or upon dissolution of the marriage, as in this case. Most jurisdictions now view antenuptial agreements favorably, and validity usually is upheld upon this policy analysis:

[A]ntenuptial contracts entered into between an adult husband and an adult wife in contemplation of marriage are favored by the law in that they tend to promote domestic happiness and adjust property questions which might otherwise become the source of much litigation.

SAMUEL GREEN & JOHN V. LONG, MARRIAGE AND FAMILY LAW AGREEMENTS § 2.06, at 114 (1984) (citing *Estate of Gillilan v. Estate of Gillilan*, 406 N.E.2d 981, 988 (Ind. Ct.App.1980)). *See* Charles W. Gamble, *The Antenuptial Contract*, 26 U. MIAMI L.REV. 692 (1972).

. . . .

We hold that, in effecting a property settlement pursuant to § 20–2–114, a trial court is obligated to enforce the agreements of the parties to the marriage, particularly the antenuptial agreement, since they are entitled to that certainty. If the trial court does not enforce such agreements, a cogent rationale justifying the failure to enforce them and explaining why the court ignored such agreements must be encompassed in the record. We conclude that the disposition by the trial court manifests an abuse of discretion because it presents an error of law under the circumstances. We reverse and remand for a new trial relative to the property division, and for a determination that the property

should be divided according to the parties' agreements, or an explanation as to why the agreement should not be enforced that is sufficiently explicit to permit us to review it in the light of our standards.

*Lund v. Lund*, 849 P.2d 731, 739–40 (Wyo. 1993) (footnote omitted).

[¶ 19] In this case, unlike the *Lund* case, we are compelled to direct the district court to revise its decree of divorce. Thus, we remand the matter to allow the district court to conduct such further proceedings as may be necessary to determine a just and equitable distribution of the marital property. If that distribution differs from that provided in the parties' original prenuptial agreement, an explanation must be provided as to why that agreement should not be enforced. Neither party contests the entry of a decree of divorce, and, thus, the decree of divorce is affirmed to the extent that it granted a divorce to the parties.

[¶ 20] Wife also requested that the district court enforce that portion of both the original agreement and the modified agreement that was incorporated into the decree that required Husband to make the 24 monthly payments of $10,000.00 to Wife. Wife's contention is that Husband has made a unilateral determination (and one that is not supported by any competent evidence of record) that he was relieved of that obligation, even though it had been ordered by the district court, because he claimed Wife "cohabited" in violation of the terms of the prenuptial agreement. It is apparent from the record that the district court did not rule on this issue. If, after further proceedings as contemplated by Rule 55(b)(2) the final decree incorporates that portion of the prenuptial agreement, the district court shall consider Wife's request for enforcement thereof.

## CONCLUSION

[¶ 21] The divorce decree entered by the district court is affirmed in part, reversed in part, and this matter is remanded to the district court with direction to enter a modified decree granting the divorce and to conduct such further hearings as may be re-

quired to determine a just and equitable distribution of the marital property.