2007 WY 117

**Robert H. BRADLEY, Appellant (Plaintiff),**

v.

**Dayelle Fargey BRADLEY, Appellee (Defendant).**

No. 06–201.

Supreme Court of Wyoming.

July 31, 2007.

Representing Appellant: Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming.

Representing Appellee: Jessica Rutzick, Jackson, Wyoming.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

KITE, Justice.

[¶ 1] Robert H. Bradley (Husband) appeals from the district court's order granting a partial summary judgment in favor of Dayelle Fargey Bradley (Wife). The court ruled, as a matter of law, that Minnesota law applied to the modification provision of the parties' premarital agreement and their postnuptial amendment to the agreement was unenforceable because it did not comply with Minnesota statutes. Husband claims that the district court erred by interpreting the premarital agreement as requiring the application of Minnesota law to the modification provision. We conclude that the district court properly interpreted the plain language of the premarital agreement and affirm.

## ISSUES

[¶ 2] Husband presents two issues on appeal:

[1.] Should the district court have granted partial summary judgment invalidating the parties' postmarital amendment to their premarital agreement, when the agreement included a clause providing that amendments shall be in writing, executed and acknowledged by the parties, and the amendment complied with those requirements?

[2.] Should the district court have granted partial summary judgment invalidating the parties' postmarital amendment to their premarital agreement, when the choice of law clause in the agreement did not require using Minnesota law, and did

not apply to amendments, considering that the amendment was signed in California by parties residing in Wyoming, and was valid under both Wyoming and California law?

Wife restates the appellate issue as:

Did the District Court properly apply Minnesota law to a purported modification of a premarital agreement, where the premarital agreement includes a choice of law provision calling for Minnesota law to govern its "validity, execution, enforcement and construction[?]"

## FACTS

[¶ 3]   The underlying facts of this case are recited in *Bradley v. Bradley*, 2005 WY 107, 118 P.3d 984 (Wyo.2005). The parties married on July 29, 2001. *Id.*, ¶ 3, 118 P.3d at 987. A few days prior to their wedding, they entered into a premarital agreement. *Id.* The agreement "governed the rights, responsibilities, and obligations of the parties in the event of divorce . . . ." *Id.* Of importance to this case, Husband agreed that he would transfer to Wife title to certain real property located in California, and, if the marriage lasted fewer than two years, a lump sum payment of $100,000. He also agreed to pay her $10,000 per month for a period of two years so long as she did not remarry or cohabitate with a third person. The premarital agreement included a choice-of-law provision stating that the "validity, execution, enforcement and construction of the terms and provisions of this Agreement shall be governed by the laws of the State of Minnesota" and a provision pertaining to modification and amendment of the agreement.

[¶ 4]   On January 28, 2003, Husband filed a complaint against Wife, seeking a divorce and property dissolution in accordance with the premarital agreement. *Id.*, ¶ 3, 118 P.3d at 987. Wife accepted service of the complaint, but did not file an answer. *Id.*, ¶¶ 4–5, 118 P.3d at 987. At Husband's request, the clerk of the district court entered a default against Wife. *Id.*, ¶¶ 5–6, 118 P.3d at 987–88.

[¶ 5]   Subsequent to the entry of default, the parties attempted to reconcile. While in California during the reconciliation period, they signed a handwritten document entitled "Amendment to Premarital Agreement Dated July 24, 200[1]." The amendment stated:

May 18, 2003

As per our discussion on May 12, 2003, I [husband] have temporarily suspended the divorce proceeding. As discussed, it is our intent to reconstitute our marriage.

As a result of our discussions, we have agreed to amend our Premarital Agreement dated July 24, 2001 as follows:

In the event that an act of adultery, occurring after May 12, 2003, becomes the issue which leads to the reinstatement of the divorce proceeding, the initial payment of $100,000.00 shall be deleted.

This agreement shall be limited to a period of 6 months from this date.

[¶ 6]   The reconciliation was unsuccessful and, on September 4, 2003, Husband requested the district court to enter a divorce decree incorporating the terms of the premarital agreement, as modified by the May 18, 2003, amendment. *Id.*, ¶¶ 6–7, 118 P.3d at 988. A few days later, the district court entered a decree in accordance with Husband's request. *Id.*, ¶ 7, 118 P.3d at 988. Wife filed a petition to modify the divorce decree requesting an opportunity to argue in favor of setting aside the amendment to the premarital agreement and reinstating the requirement that Husband pay her the $100,000 lump sum under the terms of the original agreement. She also filed a motion to enforce various terms of the divorce decree, including the provision requiring Husband to pay her $10,000 per month for two years.

[¶ 7]   The district court denied Wife's motion to modify the divorce decree, but it did not rule on her motion to enforce the divorce decree. *Id.*, ¶ 11, 118 P.3d at 989. Wife appealed to this Court, and we found her due process rights had been violated because Husband had not served her with a copy of his motion for a default judgment which sought enforcement of the amended premarital agreement. *Id.*, ¶¶ 12, 21, 118 P.3d at 989, 992. Consequently, we upheld the divorce but reversed and remanded the case "to conduct such further hearings as may be required to determine a just and equitable

distribution of the marital property." *Id.*, ¶ 21, 118 P.3d at 992.

[¶ 8]  On remand, Wife moved for a partial summary judgment arguing that, pursuant to the choice-of-law provision in the premarital agreement, Minnesota law applied to modification of the agreement, and the May 18, 2003, amendment was unenforceable because it was not made in accordance with Minnesota law.  Husband argued that Minnesota law should not be applied because the choice-of-law provision did not apply to amendments or modifications of the premarital agreement and the May 18th amendment was enforceable because it was in writing and signed by the parties in accordance with the modification provision of the premarital agreement.  After a hearing, the district court ruled that Minnesota law governed the process for amending the premarital agreement and the parties did not comply with Minnesota statutory requirements when executing the amendment.  Therefore, the court declared that the amendment was not enforceable.

[¶ 9]  The district court held a trial on the remaining issues.  After it entered a final judgment and decree, Husband appealed, claiming the district court's order granting partial summary judgment to Wife was erroneous.

## STANDARD OF REVIEW

[¶ 10]  We review all aspects of the district court's decision to grant a summary judgment *de novo*.  *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 11, 126 P.3d 886, 889 (Wyo.2006).  Pursuant to W.R.C.P. 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

[¶ 11]  In reviewing a summary judgment, we employ the same standards and examine the same material as the district court.  *Countrywide Home Loans, Inc. v. First Nat'l Bank of Steamboat Springs, N.A.*, 2006 WY 132, ¶ 11, 144 P.3d 1224, 1227

(Wyo.2006). We examine the record to determine if there are any genuine issues of material fact.  A genuine issue of material fact exists when a disputed fact, if proven, would establish or refute an essential element of a cause of action or a defense that a party has asserted.  This Court considers the evidence in the light most favorable to the party opposing the motion, affording to that party the benefit of all favorable inferences that may be drawn from the record.  *Id.*

## DISCUSSION

[¶ 12]  The district court ruled that Minnesota law governed the procedure for amending the agreement.  The choice-of-law provision of the premarital agreement stated:

### ARTICLE 15
*Interpretation*

The validity, execution, enforcement and construction of the terms and provisions of this Agreement shall be governed by the laws of the State of Minnesota.  To the extent permitted by law, the rights of the respective parties hereunder shall be determined in accordance with the provisions of Minnesota law in effect on the date of execution of this Agreement.

[¶ 13]  Minn. Stat. Ann. § 519.11 (Thomson/West 2007) governs premarital agreements (referred to as antenuptial agreement) and states in pertinent part:

**519.11.  Antenuptial and postnuptial contracts**

**Subdivision 1.  Antenuptial contract.**  A man and woman of legal age may enter into an antenuptial contract or settlement prior to solemnization of marriage which shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice.  An antenuptial contract or settlement made in conformity with this section may determine what rights each party has in the nonmarital property, defined in section 518.003, subdivision 3b, upon dissolution of marriage, legal separation or after its termination by death and may bar each other of all rights in the respective estates not so

secured to them by their agreement. This section shall not be construed to make invalid or unenforceable any antenuptial agreement or settlement made and executed in conformity with this section because the agreement or settlement covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section.

**Subd. 1a. Postnuptial contract.** (a) Spouses who are legally married under the laws of this state may enter into a postnuptial contract or settlement which is valid and enforceable if it:

(1) complies with the requirements for antenuptial contracts or settlements in this section and in the law of this state, including, but not limited to, the requirement that it be procedurally and substantively fair and equitable both at the time of its execution and at the time of its enforcement; and

(2) complies with the requirements for postnuptial contracts or settlements in this section.

(b) A postnuptial contract or settlement that conforms with this section may determine all matters that may be determined by an antenuptial contract or settlement under the law of this state, except that a postnuptial contract or settlement may not determine the rights of any child of the spouses to child support from either spouse or rights of child custody or parenting time.

(c) A postnuptial contract or settlement is valid and enforceable only if at the time of its execution each spouse is represented by separate legal counsel.

(d) A postnuptial contract or settlement is presumed to be unenforceable if either party commences an action for a legal separation or dissolution within two years of the date of its execution, unless the spouse seeking to enforce the postnuptial contract or settlement can establish that the postnuptial contract or settlement is fair and equitable.

\* \* \*

**Subd. 2. Writing; execution.** Antenuptial or postnuptial contracts or settlements shall be in writing, executed in the presence of two witnesses and acknowledged by the parties, executing the same before any officer or person authorized to administer an oath under the laws of this state. An antenuptial contract must be entered into and executed prior to the day of solemnization of marriage. A power of attorney may not be used to accomplish the purposes of this section.

**Subd. 2a. Amendment or revocation.** An antenuptial contract or settlement may be amended or revoked after the marriage of the parties only by a valid postnuptial contract or settlement which complies with this section and with the laws of this state. A postnuptial contract or settlement may be amended or revoked only by a later, valid postnuptial contract or settlement which complies with this section and with the laws of this state.

[¶ 14] It is undisputed that the parties did not comply with § 519.11 in numerous ways when they executed the May 18, 2003, amendment. For example, they failed to sign in the presence of two witnesses or a notary.[1] Husband concedes the parties' May 18, 2003, amendment was not enforceable under Minnesota law. Nevertheless, he argues that the parties' choice of Minnesota law did not apply to the provision pertaining to modification of the premarital agreement. The modification provision stated:

### ARTICLE 14

#### *Modification*

The terms and provisions of this Agreement shall be subject to modification and amendment by mutual agreement of the parties at any time and from time to time, but such modifications and amendments shall be effective only after they have been made in writing and executed and acknowledged by the parties hereto.

■■■■ [¶ 15] In order to settle this dispute, we must interpret the relevant provisions of the premarital agreement. Article

---

**1.** In addition, the parties apparently were not represented by separate legal counsel at the time of execution of the amendment.

15 states that Minnesota law applies to "construction" of the contract. Thus, the plain language of the premarital agreement directs that Minnesota law be applied to construe or interpret its terms. We note, however, that Wyoming and Minnesota rules for interpreting contracts are very similar; consequently, we will refer to analogous cases from both jurisdictions.

Whether a contract is ambiguous is a question of law, on which the reviewing court owes no deference to the district court's determination. *Blackburn, Nickels & Smith, Inc. v. Erickson,* 366 N.W.2d 640, 643–44 (Minn.App.1985), *review denied* (Minn. June 24, 1985). "The interpretation of a contract is a question of law if no ambiguity exists, but if ambiguous, it is a question of fact and extrinsic evidence may be considered." *City of Virginia v. Northland Office Props. Ltd. P'ship,* 465 N.W.2d 424, 427 (Minn.App.1991), *review denied* (Minn. Apr. 18, 1991).

*Murray v. Puls,* 690 N.W.2d 337, 343 (Minn. Ct.App.2004). *See also, Dorr v. Wyo. Bd. of Certified Public Acc'ts,* 2006 WY 144, ¶ 16, 146 P.3d 943, 953 (Wyo.2006). Courts in both states seek to interpret contracts in accordance with the parties' intentions. *Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522 (Minn.1990), citing *Hunt v. IBM Mid Am. Employees Fed. Credit Union,* 384 N.W.2d 853, 856 (Minn.1986); *Boley v. Greenough,* 2001 WY 47, ¶ 11, 22 P.3d 854, 858 (Wyo.2001) (stating that determining the parties' intent is our prime focus in interpreting or construing a contract). If a contract is unambiguous, the "contract language must be given its plain and ordinary meaning[.]" *Minneapolis Pub. Hous. Auth. v. Lor,* 591 N.W.2d 700, 704 (Minn.1999). *See also, Gilstrap v. June Eisele Warren Trust,* 2005 WY 21, ¶ 12, 106 P.3d 858, 862 (Wyo.2005). A contract is construed as a whole and, if possible, all parts of the contract are harmonized. *Chergosky,* 463 N.W.2d at 525–26; *Dorr,* ¶ 16, 146 P.3d at 953. Courts "attempt to avoid an interpretation of the contract that would render a provision meaningless." *Chergosky,* 463 N.W.2d at 526. *See also, Wells Fargo Bank Wyoming, N.A. v. Hodder,* 2006 WY 128, ¶ 21, 144 P.3d 401, 409 (Wyo.2006).

[¶ 16] Husband argues that, under the plain language of the premarital agreement, the choice of Minnesota law in Article 15 does not extend to the method of amending or modifying the contract under Article 14. Specifically, he argues that amending or modifying the agreement does not fall within the "validity, execution, enforcement and construction of the terms and provisions" language of Article 15. We disagree. The clear language used in Article 15 broadly defines the scope of the choice-of-law provision. Modification or amendment of the agreement falls within the ambit of "execution" of the contract. The word "execution" means "the act of carrying out or putting into effect." *Black's Law Dictionary* 589 (7th ed.1999). In the context of legal documents, "execute" means "to make valid by signing; to bring into its final, legally enforceable form". *Id.* Obviously, the procedure for modifying or amending the premarital agreement requires execution of a document to change the original agreement. Thus, under the terms of Articles 14 and 15, execution of an amendment to a premarital agreement must be accomplished in accordance with Minnesota law.

[¶ 17] Husband also suggests that, because Article 15 did not specifically refer to Article 14 or address the law applicable to amendment or modification of the premarital agreement, the parties' choice of Minnesota law does not apply to such amendments. Again, we cannot agree with his interpretation of the agreement. It is clear from the general language of Article 15 that the parties intended the choice-of-law provision to apply broadly to the contract. The agreement contains no specific provision indicating that they did not intend the choice-of-law provision to apply to modification of the contract. Other provisions of the agreement do not specifically speak to choice of applicable law. If we were to carry Husband's argument to its natural conclusion, each provision would need to refer to Article 14 in order for Minnesota law to apply to that provision. Clearly, that was not the parties' intent in incorporating a general choice-of-law provision into the contract.

[¶ 18] Finally, Husband argues that if the statutory requirements under § 519.11 are applied to modifications and amendments of the premarital agreement, Article 14 is essentially nullified. As we stated earlier, Minnesota contract interpretation law requires us to attempt to avoid an interpretation which would render a provision of the contract meaningless. Article 14 states that an amendment or modification would not be valid unless it was "in writing and executed and acknowledged by the parties." Husband claims that, by imposing the additional requirements from § 519.11, the court effaces Article 14 because that provision only requires that an amendment be written, executed and acknowledged by the parties. He interprets Article 14 as simply requiring the parties to sign a written document, like they did with the May 18, 2003, amendment.

[¶ 19] We do not believe that imposing the statutory requirements for amendment or modification of a premarital agreement makes Article 14 ineffective. The contract requires the amendment be "in writing," "executed" and "acknowledged by the parties." The meaning of "acknowledge" in this context is "to recognize as genuine so as to give validity; avow or admit in legal form." *Webster's Third New International Dictionary* 17 (2002). Section 519.11 requires that, in order to be valid, the amendment must be "in writing, executed in the presence of two witnesses and acknowledged by the parties, executing the same before any officer or person authorized to administer an oath." Thus, the contract required that the agreement be acknowledged, and the statute simply defined the specifics of how the acknowledgement was to be accomplished.[2] We, therefore, reject Husband's argument that, in order to preserve its integrity, we must rule that Minnesota law cannot be applied to the modification provision.

[¶ 20] We conclude, therefore, under the clear and unambiguous language of the premarital agreement, Minnesota law applies to amendment of the agreement. That conclusion does not, however, completely end our analysis. In resolving conflicts over what state's law applies to a particular problem, we have adopted Restatement (Second) of Conflict of Laws § 187 (1971 & Supp.1989). *Resource Technology Corp. v. Fisher Scientific Co.*, 924 P.2d 972, 975 (Wyo.1996). That provision states:

(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

(b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]

Restatement, *supra.*

[¶ 21] The Restatement provision generally respects the parties' contractual choice of law. However, as we stated in *Resource Technology Corp.*, 924 P.2d at 975, citing *Smithco Engineering, Inc. v. International Fabricators, Inc.*, 775 P.2d 1011, 1018 (Wyo.1989), "we will not apply foreign law when it is contrary to the law, public policy, or the general interests of Wyoming's citizens." There is no argument in this case that Minnesota law pertaining to modification of a premarital agreement is contrary to Wyoming law, public policy, or the general interests of our citizens. Moreover, there is no doubt that the parties had sufficient con-

---

2. As we noted in footnote 1 *supra*, § 519.11 also imposes requirements for effective amendment of premarital agreements beyond those discussed here. Because we hold that the parties failed to "acknowledge" the amendment in accordance with the contract and the statute, we do not need to discuss the other statutory requirements.

tacts with Minnesota to justify applying that state's law to their disputes. The record reveals that, at the time the parties executed the premarital agreement, they had significant contacts with Minnesota. The premarital agreement states that Husband owned property in Minnesota and they planned to spend "considerable time" in that state during their marriage. Thus, we conclude, under the Restatement, *supra*, the parties' choice of Minnesota law to govern the premarital agreement in general, and amendment of the agreement in particular, was valid.

## CONCLUSION

[¶ 22] The district court correctly held the plain language of the premarital agreement directed that Minnesota law applied to the procedure for amending the agreement, and the May 18, 2003, amendment did not comply with the applicable Minnesota statute. Consequently, the district court correctly granted a partial summary judgment in favor of Wife, declaring the amendment unenforceable.

[¶ 23] Affirmed.