# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 80

APRIL TERM, A.D. 2021

June 30, 2021

BRENDON A. BOYCE,

Appellant
(Defendant),

v.

JULIE A. JARVIS, f/k/a JULIE A. BOYCE,

Appellee
(Plaintiff).

S-20-0231

*Appeal from the District Court of Johnson County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
Benjamin L. Keller, Kinnaird Law Office, P.C., Sheridan, Wyoming

*Representing Appellee:*
Elizabeth B. Lance and Toni E. Hartzel, Lance & Hall LLP, Cheyenne, Wyoming

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**DAVIS**, **Chief Justice**.

[¶1]    Brendon Boyce appeals the denial of his petition for modification of alimony.  Prior to the hearing on his petition, the district court reduced Mr. Boyce's child support based on an imputed income of $4,000.00 per month.  On appeal, he claims that the court should have similarly imputed his income for alimony and reduced his alimony payments in proportion to the decrease in his income.  We affirm.

## ISSUES

[¶2]    Mr. Boyce presents a single issue, which we restate as follows:

> Did the district court abuse its discretion when it denied his request to modify alimony?

## FACTS

[¶3]    Brendon Boyce and Julie Jarvis, formerly Julie Boyce, were divorced in Connecticut in 2016 and have two children.  The parties entered into a separation agreement, which set terms for child support and alimony.  The Connecticut court found that the agreement was fair and equitable and incorporated it by reference into the parties' decree of divorce.

[¶4]    With respect to child support, the parties agreed that Mr. Boyce would pay Ms. Jarvis "Five Hundred ($500.00) Dollars per week, payable on the first of each month by cash or check, which is in accordance with the [Connecticut] Child Support and Arrearage Guidelines."  The parties further agreed that Mr. Boyce would pay alimony.  The alimony provisions were as follows:

> 3.2  Commencing January 1, 2017, the Wife shall receive alimony from the Husband in the amount of $3,500.00 per month, payable on the first of each month until August 31, 2021.  Alimony shall be paid by either cash or check.  Alimony shall terminate to Wife from Husband in the following occurrences[:] the death of either party, the remarriage of the Wife, or the cohabitation of the Wife as defined below.  The termination of Wife's alimony due to cohabitation shall only be exercisable by the Husband if he is paying at least the amount of $3,500.00 per month and is current on his payments.  The term "cohabitation" as defined herein means the Wife's living with any person, other than her mother, for a period of ninety (90) days or more, regardless of whether her living with such person alters her financial circumstances or not.

1

3.4  For purposes of alimony, no upward modification shall be allowed until such time that the parties respective gross incomes increase as such: Wife's gross income to exceed $100,000.00 per year, and the Husband's gross income to exceed $275,000.00 per year.  If the Wife's income shall exceed $100,000.00 per year, alimony shall be reduced by $15.00 for every one hundred dollars earned above $100,000.00, with such reduction to begin the month immediately following such change in the Wife's earnings.  If the Husband's income shall exceed $275,000.00 per year, alimony shall be increased by $15.00 for every one hundred dollars earned above $275,000.00, with such increase being paid by the Husband as a lump-sum alimony payment no later than June 1st of the year after any year in which his gross income exceeds $275,000.00.

3.5  At the close of each calendar year, and before June 1st of the following year, the parties shall exchange computations describing the total amount of his/her gross income from all sources received during the calendar year immediately preceding the date of such statement as well as copies of any and all tax returns and supporting IRS forms, including but not limited to IRS Forms K-1, W-2, 1099 and the like, filed for the preceding tax year.

[¶5]    At the time of the divorce, Mr. Boyce worked as an oilfield operator, drilling oil wells.  He contracted work through Boyce Consulting, Inc., a company of which he was the sole owner and shareholder.  In 2018, Boyce Consulting lost an important drilling contract due to decreased industry demand.  Mr. Boyce discontinued operations of Boyce Consulting and set up a new entity called Boyce Development Corporation, of which he was also the sole shareholder.

[¶6]    In March of 2018, Mr. Boyce secured a new short-term drilling contract through Boyce Development, but the contract was not for a definite amount of work.  It paid approximately the same per diem rate as the contract that Mr. Boyce lost, but it did not provide him equal economic benefit.  During this time, Mr. Boyce began transitioning his company to real estate ventures since he was having difficulty securing drilling work.  Through Boyce Development, he reinvested income and purchased a duplex in Florida and a condominium in Spain.  After actual expenses and investment costs, Mr. Boyce paid himself a salary of $4,000.00 per month, after taxes, from Boyce Development.

[¶7]     On January 9, 2018, Ms. Jarvis filed a notice of filing of foreign judgment in Wyoming's Fourth Judicial District Court, as well as a petition seeking an order to show cause why Mr. Boyce should not be held in contempt for failing to provide required financial documentation and for failing to make alimony payments. At that time, Ms. Jarvis lived with the two minor children in Johnson County, and Mr. Boyce lived in Florida.

[¶8]     The district court held a hearing on June 1, 2018 and issued an order on October 12, 2018. It noted that Mr. Boyce had not sought to modify alimony through the courts and found him in contempt for his failure to pay. It entered "a judgment against [Mr. Boyce], individually, and Boyce Development Corporation in the amount of $42,000 for past due alimony."

[¶9]     In addition to the petition relating to alimony, Ms. Jarvis also petitioned the court to increase her child support. The district court heard arguments on the same day as the contempt hearing, June 1, 2018, but it did not issue a written order on the modification of child support until approximately eight months later, on February 28, 2019.

[¶10]   The court found that at the time of the divorce Ms. Jarvis worked as a school administrator earning approximately $10,166.00 per month. It found that at the time of the modification hearing she was earning a net income of $1,261.79 per month, and that she was not voluntarily underemployed.

[¶11]   With respect to Mr. Boyce, it found that he was earning approximately $7,939.32 per month in income from his company at the time of the original support order. It found that Mr. Boyce was earning a salary of $4,000.00 per month from his company at the time of the modification hearing, and it used that figure to compute child support. The court further found that Mr. Boyce was investing all available company profits into a new real estate development venture, and that those investment expenditures were reasonable and legitimate considering the uncertainty of work in the oilfields.

[¶12]   Based on these figures, the district court reduced child support from $2,000.00 per month to $1,085.00 per month. Ms. Jarvis appealed the decision, but we summarily affirmed based on briefing deficiencies. *Jarvis v. Boyce*, 2019 WY 124, ¶ 4, 453 P.3d 780, 781 (Wyo. 2019).

[¶13]   On December 10, 2018, Ms. Jarvis filed another motion for an order to show cause, which alleged that Mr. Boyce had violated the divorce decree by failing to turn over any documents showing income from subcontractors for Boyce Consulting and Boyce Development for 2016 and 2017 tax years to date, as well as failing to turn over any income documents for 2017 to date. The district court held another hearing on February 13, 2019. Following the hearing, it found no willful violation of the decree and therefore did not find Mr. Boyce in contempt in an order entered on April 19, 2019.

[¶14] During this same time frame, on January 17, 2019, Mr. Boyce filed a petition to reduce alimony, in which he asserted that the financial position of both parties had substantially changed since their divorce. On January 30, 2019, Ms. Jarvis filed yet another petition for an order to show cause asking the court to hold Mr. Boyce in contempt for failing to pay the outstanding judgment from the October 2018 order, and for his continuing failure to remit alimony payments.

[¶15] The district court held a hearing on May 15, 2019. It ordered the parties to submit written briefs on Connecticut law and its applicability to the modification of alimony. Approximately fourteen months after the hearing, the district court issued an order on the petition.[1] It found that Mr. Boyce did not meet his burden to justify a modification of alimony. It further found that he owed $47,000.00 in alimony, $1,250.00 in unpaid medical bills, and $3,941.00 in attorney fees with statutory interest at 10% per annum. Since Mr. Boyce had overpaid child support in the amount of $14,063.00, the district court entered a total judgment against him in the amount of $40,928.00.

[¶16] Mr. Boyce timely appealed the district court's denial of his petition to modify alimony. In his notice of appeal, his counsel noted that the hearing was not reported, and that therefore a statement of the evidence would be prepared pursuant to W.R.A.P. 3.03. The district court settled the record as requested, and it entered its factual findings under that rule on October 30, 2020.

## STANDARD OF REVIEW

[¶17] The parties' separation agreement, which was incorporated into the decree of divorce, contained a choice of law provision, providing that the laws of Connecticut would apply to construction of the agreement and resolution of any dispute arising thereunder. In the event that another state's substantive law applies to a dispute, Wyoming law still controls any procedural matters, including the applicable standard of review. *Denbury Onshore, LLC v. APMTG Helium LLC*, 2020 WY 146, ¶ 24, 476 P.3d 1098, 1105 (Wyo. 2020).

[¶18] We review a district court's denial of a petition to modify alimony for an abuse of discretion. *Linden v. Linden*, 2020 WY 9, ¶ 9, 455 P.3d 1254, 1257 (Wyo. 2020).

> The basis of modification of alimony, similar to changes in child support, is a change in circumstance. The decision rests in the sound discretion of the court provided that a change in circumstances does exist. The test for decision in alimony revision . . . like child support, is exercised discretion of the

---

[1] Nothing in the record explains this delay, and we can think of no valid reason for it.

4

district court and will not be disturbed on appeal absent clear abuse.

*Id.* (quoting *Dorr v. Newman*, 785 P.2d 1172, 1178 (Wyo. 1990)); *see also Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020) ("We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.") (citation omitted).

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Johnson*, ¶ 10, 458 P.3d at 32 (quoting *Jacobson v. Kidd*, 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018)) (internal quotation marks and citations omitted).

## DISCUSSION

### A.    Choice of Law

[¶19]  The choice of law provision in the parties' agreement states:

ARTICLE XIV – SITUS

> 14.1  It is understood and agreed that this Agreement is entered into under the laws of the State of Connecticut, and the execution hereof wherever and whenever undertaken shall be deemed to be completed upon delivery of the Agreement in Connecticut.  The laws of the State of Connecticut shall be applied to any construction of this Agreement and in the resolution of any dispute arising hereunder.

The record is not entirely clear whether the district court applied Connecticut or Wyoming law, but its request for briefing on Connecticut law and the statement in its order that it received and reviewed that briefing suggest that it did apply Connecticut law.

5

[¶20] Mr. Boyce argues that the parties' choice of law should be respected, and that Connecticut law applies. Ms. Jarvis contends that Wyoming law should apply because Mr. Boyce did not argue Connecticut law below, and the district court therefore had no opportunity to determine whether Connecticut law is contrary to Wyoming law, policy or interests. She asserts, however, that the result will be the same regardless of which state's law applies.

[¶21] To resolve conflicts of this nature, we have adopted the Restatement (Second) of Conflict of Laws § 187 (1971 & Supp. 1989). *Bradley v. Bradley*, 2007 WY 117, ¶ 20, 164 P.3d 537, 543 (Wyo. 2007) (citing *Resource Technology Corp. v. Fisher Scientific Co.,* 924 P.2d 972, 975 (Wyo. 1996)). It states:

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either

> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or

> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue[.]

Restatement (Second) of Conflict of Laws § 187 (1971 & Supp. 1989).

[¶22] There is no doubt that the parties had significant contacts with Connecticut when they executed the separation agreement. Both parties resided and owned real property there. Consequently, Connecticut had a reasonable relationship to the matters at issue in this case. *See generally Bradley*, ¶ 21, 164 P.3d at 543-44 (finding that the choice of law provision was valid when the parties' owned real property in the state and planned to spend a considerable amount of time there when they entered into the agreement).

[¶23] In *Bradley*, a premarital agreement contained a choice of law provision applying Minnesota law to divorce decree modifications. ¶¶ 3-9, 164 P.3d at 539-40. We interpreted

the Restatement to generally respect the parties' contractual choice of law, and we reiterated that we apply the parties' choice unless "it is contrary to the law, public policy, or the general interests of Wyoming's citizens." *Id.* ¶ 21, 164 P.3d at 543.

[¶24] We reject Ms. Jarvis' suggestion that the district court could have concluded that Connecticut law is "contrary to the law, public policy, or the general interests of Wyoming's citizens." First, she provides no cogent analysis to support her assertion. *See generally Bradley,* ¶¶ 21-22, 164 P.3d at 543-44 (rejecting general statements that a choice of law provision is contrary to law); *Fleet v. Guyette*, 2020 WY 78, ¶ 20, 466 P.3d 812, 819 (Wyo. 2020) (citing *Osban v. State*, 2019 WY 43, ¶ 7 n.2, 439 P.3d 739, 741 n.2 (Wyo. 2019) ("An appellant is required to present this court with relevant authority and cogent argument. It is not enough to identify a potential issue with the expectation that this court will flesh out the matter from there.")). Second, Ms. Jarvis could have raised any such concern with the district court when it asked for briefing on Connecticut law, and there is no indication in the record that she did so.

[¶25] We therefore conclude that the parties' choice of Connecticut law is valid. We also note, however, that Wyoming and Connecticut rules for modifying alimony are very similar, and consequently we will refer to cases from both jurisdictions. *See generally Bradley*, ¶ 15, 164 P.3d at 542 (applying analogous cases from Minnesota and Wyoming to interpret contracts since both states' rules were similar).

## B. Modification of Alimony

[¶26] We next turn to Mr. Boyce's argument that the district court abused its discretion when it found that he failed to justify a modification of alimony under Connecticut law.

## 1. Record on Review

[¶27] At the outset, we note that our review is limited by the parties' failure to have the district court proceeding reported.

> When no transcript has been made of the trial proceedings, this Court accepts the trial court's findings as being the only basis for deciding the issues which pertain to the evidence. *Armstrong v. Pickett*, 865 P.2d 49, 50 (Wyo. 1993). In the absence of anything to refute them, we will sustain the trial court's findings, and we assume that the evidence presented was sufficient to support those findings. *Osborn v. Pine Mountain Ranch*, 766 P.2d 1165, 1167 (Wyo. 1989).

7

*Willowbrook Ranch, Inc. v. Nugget Expl., Inc.*, 896 P.2d 769, 771-72 (Wyo. 1995); *see also Sears v. Sears*, 2021 WY 20, ¶ 19, 479 P.3d 767, 773-74 (Wyo. 2021); *Martin v. DeWitt*, 2014 WY 112, ¶ 5, 334 P.3d 123, 125-26 (Wyo. 2014).

[¶28]  We confront the same limitations when we are provided a settled statement of the evidence that does not provide a sufficient basis to evaluate the district court's exercise of discretion.

> Although this law has developed for the most part in cases where neither a transcript of the proceedings nor a settled statement of the evidence has been provided, the same rationale holds true in cases where the settled statement of the evidence does not address the issues presented to this Court, or does not provide sufficient basis for a finding of abuse of discretion.

*Beeman v. Beeman*, 2005 WY 45, ¶ 11, 109 P.3d 548, 552 (Wyo. 2005).

[¶29]  In its order settling the record, the district court identified the exhibits received in evidence and summarized each party's testimony.  In the last paragraph, it "found that the testimony offered by Ms. Jarvis was more credible and reliable and based its ruling on her testimony."

[¶30]  Because we have no transcript, we must assume that the court's summary accurately reflects Ms. Jarvis' testimony.  Additionally, because we defer to a trial court's credibility determinations, we must accept its decision to base its ruling on that testimony.  *See generally McMurry v. McMurry*, 2010 WY 163, ¶ 9, 245 P.3d 316, 320 (Wyo. 2010) ("We generally defer to the district court's findings since it is in a better position to assess the witnesses' credibility, weigh the evidence and judge the respective merits and needs of the parties.").  Our review is therefore confined to the district court's summary of Ms. Jarvis' testimony and the exhibits admitted into evidence to determine whether the district court's denial of the petition to modify alimony was reasonable.[2]

---

[2] Neither party contends that the district court abused its discretion in settling the record. *See Bolding v. Kindel Concrete, LLC*, 2014 WY 132, ¶ 16, 336 P.3d 144, 148 (Wyo. 2014) (noting that settling of record is within district court's discretion) (quoting *Northwest Bldg. Co., LLC v. Northwest Distrib. Co.*, 2012 WY 113, ¶ 32, 285 P.3d 239, 247 (Wyo. 2012)). Mr. Boyce does take issue with the court's summary of Ms. Jarvis' testimony, but because there is no transcript of the evidentiary proceedings, he is unable to point to any inaccuracies. We again emphasize the importance of having evidentiary proceedings reported and designating the transcript as part of the record on appeal when a party wishes to challenge a trial court's factual findings.

## 2.    District Court's Exercise of Discretion

[¶31]  In Connecticut, alimony modification is governed by Connecticut General Statutes § 46b–86 (a), which provides in relevant part: "Unless and to the extent that the decree precludes modification . . . an order for alimony or support . . . may, at any time thereafter, be . . . altered or modified . . . upon a showing of a substantial change in the circumstances of either party. . . ." *O'Donnell v. Bozzuti*, 84 A.3d 479, 483-84 (Conn. App. 2014). "Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred." *Flood v. Flood*, 234 A.3d 1076, 77, *cert. denied*, 239 A.3d 317 (Conn. App. 2020). "[T]he moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it." *Olson v. Mohammadu*, 149 A.3d 198, 207 (Conn. App. 2016) (quoting *Borkowski v. Borkowski*, 638 A.2d 1060 (Conn. 1994)). "Simply put, before the court may modify an alimony award . . . pursuant to § 46b–86, it must make a threshold finding of a substantial change in circumstances with respect to one of the parties." *Harlow v. Stickels*, 94 A.3d 706, 710 (Conn. App. 2014) (internal quotation marks and citations omitted).

> Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony and support are relevant to the question of modification [Connecticut General Statute § 46b-82 (West 2021)]. The power of the trial court to modify the existing order does not, however, include the power to retry issues already decided . . . or to allow the parties to use a motion to modify as an appeal. . . . Rather, the trial court's discretion includes only the power to adapt the order to some distinct and definite change in the circumstances or conditions of the parties. . . .

> Thus, when presented with a motion for modification, a court must first determine whether there has been a substantial change in the financial circumstances of one or both of the parties. . . . Second, if the court finds a substantial change in circumstances, it may properly consider the motion and, on the basis of the [Connecticut] General Statutes § 46b-82 criteria, make an order for modification. . . . The court has the authority to issue a modification only if it conforms the order to the distinct and definite changes in the circumstances of the parties.

9

*Berger v. Finkel*, 128 A.3d 508, 511 (Conn. App. 2015) (internal quotation marks and citations omitted)[3]; *see also Linden*, ¶ 13, 455 P.3d at 1258 ("Modification, however, can be made only on the showing of changed circumstances from those at the time of the former decree. The changed circumstances must be substantial, and the appellant bears the burden of showing this change before modification will occur.") (internal quotation marks omitted).

[¶32]   Neither party asked the district court to make findings of fact, and the court's order does not explicitly state that the court found no substantial change in circumstances. The order indicates:

> 3.   Defendant argued in his Petition [for] Modification of Alimony that since the divorce, his income had decreased to such a degree to justify a modification under Connecticut law. Plaintiff contested Defendant's characterization of his financial situation, arguing that he instead of honoring his obligations under their divorce decree has been focused on turning liquid assets in to non-liquid assets. Furthermore, Plaintiff testified, and Defendant did not contest the testimony, that although the court in Connecticut characterized the payment as alimony, that in fact it was payment for her interest in the business that the two of them were operating while married, i.e. a property settlement agreement, not spousal support.

> 4.  Based on financial records, the parties' testimony, the Court finds that Defendant has not met his burden to justify a modification of his alimony obligation. . . .

[¶33]   Although the order does not explicitly state that the district court stopped its analysis at the threshold determination that Mr. Boyce failed to show a substantial change in circumstances, we believe the finding is implied. The court indicated that it based its ruling on Ms. Jarvis' testimony, which included testimony that Mr. Boyce continued to be well-employed in the oilfields, that he was converting liquid assets to non-liquid assets, that he was manipulating his reported income, and that he was capable of paying the alimony originally ordered. We will therefore review the court's order as if it had expressly found that Mr. Boyce failed to show a substantial change in circumstances.

---

[3] The factors a court may consider after it finds a substantial change in circumstances are "the length of the marriage, the causes for the . . . dissolution of the marriage, . . . the age, health, station, occupation, amount and sources of income, earning capacity, vocational skills, education, employability, estate and needs of each of the parties . . . and, in the case of a parent to whom the custody of minor children has been awarded, the desirability and feasibility of such parent's securing employment." Connecticut General Statutes § 46b–82 (a); *see also Berman v. Berman*, 248 A.3d 49, 53 (Conn. App. 2021).

[¶34]   Mr. Boyce contends that the district court abused its discretion in so ruling because he demonstrated a significant change in his financial situation.  He asserts that his income diminished substantially due to the loss of his consulting contract and the uncertainty of the oilfield industry, which caused his earnings and business income to fluctuate.  He further asserts that his income decreased from approximately $275,000 annually at the time of the original award to approximately $80,000 annually at the time of the hearing, that he has an outstanding debt to the Internal Revenue Service of more than $100,000, and that he withdrew money from his retirement account to pay his alimony arrearage.  Based on this change in circumstances, he contends that the court should have found his imputed income to be $4,000.00 a month, as it did in his child support modification, and that it should have therefore modified his alimony accordingly.

[¶35]   Mr. Boyce relies on two cases, *Spencer v. Spencer*, 173 A.3d 1, 21 (Conn. App. 2017), and *Bauer v. Bauer*, 164 A.3d 796, 804 (Conn. App. 2017), for the general proposition that his monthly alimony obligation should be modified in proportion to his claimed decrease in income.  While both cases upheld a downward modification of alimony based on a decrease in income and an inability to pay, we do not find them helpful in this appeal.

[¶36]   First, the cases are factually distinguishable.  In *Spencer* and *Bauer*, the courts found a decrease in income and an inability to pay the originally ordered alimony.  In this case, on the other hand, the court found that Mr. Boyce had not suffered a decrease in income that would diminish his ability to pay the alimony as originally ordered.  Additionally, Mr. Boyce has both liquid and non-liquid assets, which also bears on the question of alimony modification.  *See* Connecticut General Statutes § 46b–82 (West 2020); *Bartlett v. Bartlett*, 599 A.2d 14 (Conn. 1991).

[¶37]   In *Bartlett*, the plaintiff alleged that it was improper for the trial court to refuse to consider evidence of the vesting of the defendant's inheritance as a basis for determining whether a substantial change in circumstances warranted an alimony modification.  599 A.2d at 18.  The plaintiff argued that that the court's ruling was erroneous because the defendant's "financial circumstances had changed substantially due to his [newly vested] inheritance." *Id.* at 19-20.  The defendant argued that the assets should not be considered until he received a distribution. *Id.* at 18.  The Connecticut Supreme Court disagreed with defendant and concluded that an inheritance, once vested in the heir upon death of the donor, constituted a changed circumstance that was properly considered in a request to modify alimony, notwithstanding that the property had yet to be distributed. *Id.*  The court held that "all assets, liquid and nonliquid alike" must be considered on a motion to modify alimony because a "contrary rule would encourage parties who acquire substantial amounts of nonliquid assets after the original judgment to insulate themselves from paying more alimony, despite their increased wealth." *Id.* at 19.

[¶38] As already noted above, the record supports that Mr. Boyce converted liquid assets to non-liquid assets, was re-investing rental income into his business, including rental income from a duplex in Florida and a condominium in Spain. The record further supports Ms. Jarvis' testimony that Mr. Boyce continued to be well-employed and could pay alimony as originally awarded. Indeed, his 2018 invoices suggest that his company earned approximately $223,280.00 from his subcontractor agreement. The invoices from March 2019 and April 2019 also indicate that his company was paid $51,800.00. Against this limited record, we are unable to find an abuse of discretion in the district court's conclusion that Mr. Boyce did not show a substantial change in circumstances that would warrant a downward modification of his alimony obligation.

[¶39] We are not persuaded otherwise by Mr. Boyce's argument that there is an inconsistency between the district court's income calculation for his child support obligation and its treatment of the requested alimony obligation. First, the court found Ms. Jarvis' testimony that Mr. Boyce had understated his income in the child support modification hearing credible. Additionally, and more importantly, both Connecticut and Wyoming law recognize that alimony and child support serve different purposes, and those differences can affect whether a modification is appropriate. *McKeon v. Lennon*, 138 A.3d 242, 249 (Conn. 2016) (different purposes of alimony and child support must be considered in determining modification requirements); *Linden*, ¶ 16, 455 P.3d at 1259-60 (court is not bound to modify alimony when it modifies child support). As we explained in *Linden*:

> Father argues that the district court must base child support and alimony on the same imputed income. We conclude, however, that the district court was not bound to modify alimony because it modified the child support. The alimony served a different purpose and was not awarded solely on the basis of income but was, to a degree, in lieu of property available for division. The district court is entitled to look at the totality of the circumstances in determining whether a modification is appropriate. *Ready* [*v. Ready*, 2003 WY 121], ¶ 22, 76 P.3d [836,] 842 [(Wyo. 2003)]; *Muller* [*v. Muller*], 838 P.2d [198,] 199, 201 [(Wyo. 1992)]. Alimony is a separate inquiry from child support and may be based on a payor's expectation of future earnings:
>
>> The cases have frequently and uniformly held that the court may base its decision on the husband's ability to earn, rather than his current earnings. If the court were limited to the momentary current earnings of a husband, particularly one who was engaged in a seasonal industry or whose earnings had widely fluctuated, the court would get a distorted view of his financial potential.

> *Muller*, 838 P.2d at 201 (quoting *Meagher v. Meagher*, 190 Cal.App.2d 62, 11 Cal. Rptr. 650, 651 (1961)). The trial court "was justified in considering employment expectancy reasonably created by [Father's] experience, capability and physical ability" when it refused to modify the original award, notwithstanding the imputed income it used to modify child support. *Muller*, 838 P.2d at 199.

*Linden*, ¶ 16, 455 P.3d at 1259-60.

## **CONCLUSION**

[¶40]   Based on the record before us, we conclude that the district court could reasonably find that Mr. Boyce failed to show a substantial change in circumstances that would warrant a modification of his alimony obligation.  We therefore find no abuse of its discretion in the district court's order denying the petition to modify his alimony obligation.

[¶41]   Affirmed.